**Kevin M. CALHOUN, Appellant**

v.

**Frances Marie WOOD, Appellee**

NO. 2016–CA–000972–ME

Court of Appeals of Kentucky.

MARCH 17, 2017; 10:00 A.M.

BRIEF FOR APPELLANT: B. J. Early, Hawesville, Kentucky

BRIEF FOR APPELLEE: N/A

BEFORE: KRAMER, CHIEF JUDGE; D. LAMBERT AND NICKELL, JUDGES.

## OPINION

KRAMER, CHIEF JUDGE:

Kevin M. Calhoun appeals the Hancock Circuit Court's interpersonal protective order. After a careful review of the record,

we affirm because there was sufficient evidence to support the circuit court's finding of stalking.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Frances Marie Wood filed a petition for an order of protection in the Hancock Circuit Court. In her petition,[1] Wood alleged that Kevin M. Calhoun

> has been stalking [and] harassing me for almost [two years] now. Last night shows up [and] walks into my apartment unannounced. Gave him back what he came for that he bought. (Bed rails)— before he left took a drill to my back left tire so I couldn't go into work today. I've told him numerous times to leave me alone and not to contact me any longer [and] has still kept bothering me. Currently is on probation from my understanding for [third-]degree sexual harassment to minor [and] just tried to kill himself. I want him to leave me alone for good. In relation to tire he had bought [two years] ago [and] claiming it was his property. He has also almost gotten me evicted from my apartment. Landlord has him on video at popular Grove Apartments in Lewisport.

A temporary interpersonal protective order (TIPO) was entered against Calhoun. In that order, Calhoun was ordered to be restrained from going within 500 feet of the "Ole South BBQ, Hwy. 54, Owensboro, KY."[2]

Subsequently, a hearing was held on the petition for the IPO. Following the hearing, the circuit court entered findings of fact and granted Woods an interpersonal protective order (IPO) based upon the testimony and evidence presented during the hearing. The findings of fact entered by the court were as follows:

> [Woods] was friends with [Calhoun]. [Woods] told [Calhoun] she did not want a romantic relationship with him. [Calhoun] would not accept that, and "repeatedly" comes by [Woods's] apartment. On one occasion [Calhoun] let himself in[to Woods's] apartment and would not leave until [Woods] talked to [him]. [Calhoun] drilled a hole in [Woods's] tire.

The court then entered its IPO on June 28, 2016. The order stated that it would be effective until December 28, 2016. It provided that Calhoun had to remain at least 500 feet away from Woods, except for court appearances. The IPO also stated that Calhoun had to stay at least 500 feet away from the following location: "Ole South BarBQue, Hwy. 54, Owensboro, KY." Calhoun now appeals, contending that the circuit court's finding that stalking occurred is not supported by the evidence. Wood did not file a response brief on appeal.

## II. ANALYSIS

We begin our analysis by noting that the IPO at issue expired on December 28, 2016. The expiration of the order appealed from would ordinarily render this appeal moot. "[A] 'moot case' is one which seeks to get a judgment ... upon some matter which, when rendered, for any reason, cannot have any practical legal effect upon a then existing controversy." *Morgan v. Getter*, 441 S.W.3d 94, 98–99 (Ky. 2014) (emphasis removed; internal quotation marks and citation omitted). Typically, "where, pending an appeal, an event oc-

---

1. We have chosen not to make corrections to the wording of Wood's petition, other than what we have bracketed in our quotation of her petition.

2. It is not clear what the significance of that location is to this case.

curs which makes a determination of the question unnecessary or which would render the judgment that might be pronounced ineffectual, the appeal should be dismissed." *Id.* at 99 (internal quotation marks and citations omitted).

■ However, there are exceptions to this mootness rule. One such exception is the "collateral consequences" exception. An example of the "collateral consequences" exception is where a criminal sentence is expired but this does not render the appeal of the judgment of conviction moot "because there remain consequences of the conviction (such as the loss of various civil rights) deemed sufficient to keep alive the appellant's personal stake in the outcome of the appeal." *Id.* (Citations omitted). This Court has applied the "collateral consequences" exception to a case in which a domestic violence order (DVO) expired while the appeal was pending. *See id.* (Discussing *Caudill v. Caudill*, 318 S.W.3d 112 (Ky. App. 2010)). In the *Caudill* case, the appellant against whom the DVO had been entered argued that "testing the sufficiency of the evidence on which a DVO has been granted is never moot because entry of a DVO follows the alleged perpetrator forever in terms of background checks for employment purposes and volunteer work such as coaching Little League sports." *Caudill*, 318 S.W.3d at 114. This Court agreed with the appellant in *Caudill* that the appeal was not moot.

It appears the purpose and intent behind, and the interpretation of, the DVO statutes are almost identical to that of the IPO statutes. *Compare* KRS 403.715 *with* KRS 456.020. Therefore, the reasoning in *Caudill* is applicable to the case at hand, and we hold that Calhoun's appeal meets the "collateral consequences" exception to mootness.[3]

■ Wood petitioned the circuit court for an IPO against Calhoun, and the court granted it. A person may file a petition for an IPO if, *inter alia*, they are a victim of stalking. *See* KRS [4] 456.030(1)(b). In granting the IPO in this case, the circuit court reasoned that Calhoun had stalked Wood. Calhoun contends that the circuit court's finding that stalking occurred is not supported by the evidence. Under the IPO statutes, the term "'[s]talking' refers to conduct prohibited as stalking under KRS 508.140 or [KRS] 508.150." KRS 456.010(7). Those two statutes explain what constitutes first-degree and second-degree stalking. In the present case, Calhoun's conduct does not appear to satisfy the elements of first-degree stalking because there have been no allegations that the elements of KRS 508.140(1)(b)[5] were met. On the other hand,

> A person is guilty of stalking in the second degree when he intentionally:
>
> (a) Stalks another person; and
>
> (b) Makes an explicit or implicit threat with the intent to place that person in reasonable fear of:

---

3. As previously noted, Wood did not file a brief on appeal in this case. Nevertheless, we will use our discretion and review the case while accepting Calhoun's statement of the facts and issues. *See* Kentucky Rule of Civil Procedure 76.12(8)(c)(i).

4. Kentucky Revised Statute.

5. KRS 508.140(1)(b) requires, *inter alia*: A protective order to have been issued by the

court to protect the same victim; a criminal complaint to be currently pending by the same victim; the defendant to have been convicted within the prior five years of a felony or Class A misdemeanor against the same victim; or the act to have been committed while the defendant had a deadly weapon on his person.

1. Sexual contact as defined in KRS 510.010;

2. Physical injury; or

3. Death.

KRS 508.150(1). The term "stalk" as used in this statute is defined as follows:

(1) (a) To "stalk" means to engage in an intentional course of conduct:

1. Directed at a specific person or persons;

2. Which seriously alarms, annoys, intimidates, or harasses the person or persons; and

3. Which serves no legitimate purpose.

(b) The course of conduct shall be that which would cause a reasonable person to suffer substantial mental distress.

(2) "Course of conduct" means a pattern of conduct composed of two (2) or more acts, evidencing a continuity of purpose. . . .

KRS 508.130.

In the circuit court, Wood alleged that Calhoun had walked into her apartment unannounced; he drilled a hole in her tire so that she could not go to work; she had told him multiple times to leave her alone and stop contacting her, but he persisted in doing so; and her landlord had surveillance video of the apartment complex showing Calhoun's vehicle repeatedly driving around it. This clearly meets the definition of "stalk" as defined in KRS 508.130 because Calhoun's actions involved a pattern of conduct composed of two or more acts, so they constituted a "course of conduct"; the course of conduct was clearly intentional and it was directed at Wood; the course of conduct seriously alarmed, annoyed, intimidated, or harassed Wood; it served no legitimate purpose; and it would cause a reasonable person to suffer substantial mental distress.

Having met the definition of "stalk" under KRS 508.130, we now turn to address whether Calhoun's actions would have satisfied the elements of second-degree stalking, as set forth in KRS 508.150(1). Because Calhoun's actions toward Wood met the definition of "stalk" and he made an implicit threat with the intent to place Wood in reasonable fear of physical injury or death by intentionally damaging her car so that it would not function properly, Calhoun satisfied the elements of second-hand stalking under KRS 508.150(1).

Because Wood was a victim of stalking, she was permitted to file a petition for an IPO. See KRS 456.030(1)(b). Further, the circuit court properly entered an IPO against Calhoun after conducting a hearing and finding, by a preponderance of the evidence, that: Wood told Calhoun she did not want a romantic relationship with him; Calhoun would not accept the fact that Wood did not want a romantic relationship with him, and he repeatedly came by her apartment; Calhoun let himself into Wood's apartment on one such occasion and would not leave until Wood spoke with him; Calhoun drilled a hole in Wood's tire; and it was necessary to restrain Calhoun from further acts of stalking. See KRS 456.060(1).

Based on our analysis of the proceedings in the circuit court, we conclude there was sufficient evidence for the circuit court to find that Calhoun stalked Wood. The court properly entered an IPO against Calhoun. Consequently, Calhoun's claim on appeal lacks merit.

Accordingly, the order of the Hancock Circuit Court is affirmed.

ALL CONCUR.