RENDERED:  SEPTEMBER 11, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-000134-ME


KYLE M. MARCUM                                                    APPELLANT


                          APPEAL FROM HARDIN CIRCUIT COURT
v.                        HONORABLE M. BRENT HALL, JUDGE
                          ACTION NO. 19-D-00733-001


KOUET MENG                                                         APPELLEE


                                OPINION
                               AFFIRMING

                            ** ** ** ** **


BEFORE:  CLAYTON, CHIEF JUDGE; DIXON AND JONES, JUDGES.

CLAYTON, CHIEF JUDGE:  Kyle Marcum ("Marcum") appeals from the Hardin

Circuit Court's grant of an interpersonal protective order ("IPO") against him after

finding that he had stalked Kouet Meng ("Meng").  Upon review of the record and

applicable law, we affirm.

# BACKGROUND

Meng and Marcum were involved in a dating relationship for approximately two years.  The parties ended their relationship in October of 2019.  On December 13, 2019, Meng filed a petition for an IPO against Marcum.  Meng alleged the following in his petition for the IPO:

> [Marcum] let himself into my residence at 5:00 a.m., knowing where I normally hide my key.  I was asleep and did not hear him come in until he knocked on my bedroom door.  Being asleep and not expecting anyone to show up at my place that early in the morning, I opened the door thinking there was some emergency.  When I opened the door, he grabbed me, pushed me onto the bed, ripped my pants down, and "examined" me.  He then accused me of cheating on him.  [Marcum] and I had dated for two years until I broke up with him in October.  Since this assault, he has stalked me physically and online.  He showed up at my work on December 12[th] but I refused to come out and see him.  He will call numerous times during the day and night.  He sends numerous harassing text messages throughout the day and night.  He accuses me of being a prostitute and threatened to tell my employer and my friends that I have sex for money unless I admitted to this lie.  I refused to give in and now he has posted numerous Facebook posts telling lies about me.  Even though I am an American citizen, he has threatened to call the police and have me deported.  He has sent faceless, pornographic photos to my friends and told them it was me.  The more I try to ignore him, the angrier he gets.  I am afraid that he is going to do something bad to me, even kill me.  His constant posts, text messages, and telephone calls to my friends and acquaintances in which he spreads lies about me are harming my reputation.  I just want him to stop contacting me, harassing me, and stalking me and stay away from me.

The circuit court issued a temporary IPO entered on December 17, 2019.

Thereafter, the circuit court held a hearing related to the issues on December 30, 2019. Meng testified at the hearing that the incidents and allegations contained in his petition for the IPO were true. Meng additionally testified that Marcum never made any express threats to physically or sexually harm Meng or to cause him death. Moreover, Meng testified that, while the incident in which Marcum entered Meng's home occurred on December 6, 2019, Meng waited until December 13 to file the petition for an IPO. Meng further testified that he had gone to Marcum's residence one time during that week. Marcum exercised his Fifth Amendment right against self-incrimination at the hearing and did not testify.

At the conclusion of the hearing, the circuit court granted Meng an IPO based on the circuit court's finding that Marcum had stalked Meng. The IPO stated that it was effective until December 30, 2021. This appeal followed.

## ANALYSIS

### a. Standard of Review

A circuit court's findings of fact will only be disturbed if clearly erroneous. Kentucky Rule of Civil Procedure (CR) 52.01; *Cherry v. Cherry*, 634 S.W.2d 423, 425 (Ky. 1982). A finding of fact is clearly erroneous if it is not supported by substantial evidence. *Hunter v. Hunter*, 127 S.W.3d 656, 659 (Ky.

App. 2003) (citations omitted). "Substantial evidence is evidence, when taken alone or in light of all the evidence, which has sufficient probative value to induce conviction in the mind of a reasonable person." *Id.* (citations omitted). We review questions of law *de novo*. *Id.*

In our review of an IPO, "the test is not whether we would have decided it differently, but whether the findings of the [family] judge were clearly erroneous or that he abused his discretion." *Cherry*, 634 S.W.2d at 425 (citation omitted). "Abuse of discretion occurs when a court's decision is unreasonable, unfair, arbitrary or capricious." *Castle v. Castle*, 567 S.W.3d 908, 915 (Ky. App. 2019) (citation omitted). "[W]e give much deference to a decision by the family court, but we cannot countenance actions that are arbitrary, capricious or unreasonable." *Id.* at 916 (citation omitted).

b. **Discussion**

A person may file a petition for an IPO if they are a victim of stalking. *See* Kentucky Revised Statute (KRS) 456.030(1)(b). Marcum contends that the circuit court's finding that stalking occurred was not supported by substantial evidence. Under the IPO statutes, the term "'[s]talking' refers to conduct prohibited as stalking under KRS 508.140 or [KRS] 508.150[.]" KRS 456.010(7). The two statutes contained in Chapter 508 describe the circumstances constituting both first-degree and second-degree stalking. In the present case, Marcum's

conduct does not appear to satisfy the elements of first-degree stalking because there have been no allegations that the elements of KRS 508.140(1)(b) were met.

Alternately:

A person is guilty of stalking in the second degree when he intentionally:

    (a) Stalks another person; and

    (b) Makes an explicit or implicit threat with the intent to place that person in reasonable fear of:

        1. Sexual contact as defined in KRS 510.010;

        2. Physical injury; or

        3. Death.

KRS 508.150(1). The term "stalk" as used in this statute is defined as follows:

    (1) (a) To "stalk" means to engage in an intentional course of conduct:

        1. Directed at a specific person or persons;

        2. Which seriously alarms, annoys, intimidates, or harasses the person or persons; and

        3. Which serves no legitimate purpose.

    (b) The course of conduct shall be that which would cause a reasonable person to suffer substantial mental distress.

(2) "Course of conduct" means a pattern of conduct composed of two (2) or more acts, evidencing a continuity of purpose.

KRS 508.130.

In this case, Meng alleged that Marcum had – among other things – utilized a hidden key to access Meng's apartment unannounced at 5:00 in the morning and assaulted him, harassed Meng via text messages and phone calls, and shown up at Meng's place of work unannounced. The foregoing actions meet the definition of "stalk" as defined in KRS 508.130. Marcum's actions constituted a "course of conduct," as they involved a pattern of conduct composed of two or more acts. Further, the course of conduct was clearly intentional, directed at Meng, seriously alarmed, annoyed, intimidated, or harassed Meng, served no legitimate purpose, and would cause a reasonable person to suffer substantial mental distress.

Having met the definition of "stalk" under KRS 508.130, we must also address whether Marcum's actions would have satisfied the elements of second-degree stalking as set forth in KRS 508.150(1). Marcum argues that, because Meng acknowledged at the hearing that Marcum never made any verbal threats to harm Meng, Marcum had made no "explicit or implicit threat with the intent to place [Meng] in reasonable fear" of sexual contact, physical injury, or death.

-6-

Such argument is unavailing. In *Calhoun v. Wood*, a panel of this Court found that an implicit threat existed where an individual intentionally damaged another individual's car so that the vehicle would not operate properly. 516 S.W.3d 357, 361 (Ky. App. 2017). The Court did not require that the threat of physical injury or death had to be directly communicated to the victim by the perpetrator. *Id*. Rather, the perpetrator's actions could be taken as an implicit threat. *Id*.

In the case *sub judice*, Marcum's actions of intentionally entering Meng's home without permission and forcibly pulling down Meng's pants could be taken as an implicit threat of future assaults. Marcum's conduct included not only implicit threats of injury, but also actual physical contact.

Based on Meng's testimony, we conclude that the findings of the circuit court were not clearly erroneous, as they were supported by Meng's testimony which the family court found credible. "[J]udging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the trial court." *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (citation omitted). Because Marcum's actions toward Meng met the definition of "stalk" and Marcum made an implicit threat with the intent to place Meng in reasonable fear of physical injury, sexual contact, or death, the elements of second-degree stalking under KRS 508.150(1) were satisfied and the circuit court properly issued the IPO.

## **CONCLUSION**

For the foregoing reasons, the order of the Hardin Circuit Court is affirmed.

ALL CONCUR.


BRIEFS FOR APPELLANT:

John N. Nicholas
Elizabethtown, Kentucky

BRIEF FOR APPELLEE:

M. Thomas Underwood
Louisville, Kentucky