RENDERED:  APRIL 5, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0872-ME

TRAVIS TAYLOR                                                                          APPELLANT

v.

APPEAL FROM FAYETTE CIRCUIT COURT
HONORABLE ROSS EWING, JUDGE
ACTION NO. 23-D-00798-001

RACHEL PHELPS                                                                          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, GOODWINE, AND LAMBERT, JUDGES.

GOODWINE, JUDGE:  Appellant, Travis Taylor ("Taylor"), appeals from a
Domestic Violence Order ("DVO") entered against him by the Fayette Circuit
Court.  After careful review, we affirm.

## I. BACKGROUND

Appellee, Rachel Phelps ("Phelps"), filed a petition for a protective
order on June 11, 2023 against Taylor.  The allegations in the petition read as
follows:

> Previously had police escort myself off a property to safely move out after break up. Request for escort was due to prior DV instances unreported. [Taylor] has harassed [Phelps] at work in the past. Started again mid May of current year. Emergency operations at [Phelps'] place of employment had to get involved. [Taylor] most recently was physical while [Phelps] was operating a motor vehicle and endangering [Phelps] as well as other motorists. [Taylor] then followed [Phelps] to her home and would not leave. [Taylor] continues to call and message [Phelps] threatening her and her friends. [Taylor] has also followed [Phelps] to a friend[']s house and used public profile to harass friend as well for a former offense. [Taylor] was walking around a public space with a bat in hand making verbal threats as well (most recent incident 06/11/2023).

(Record ("R.") at 5.) Notably, Phelps marked the parties' relationship as "currently or previously in a dating relationship." (R. at 6.) After review of the petition, the circuit court entered a Temporary Interpersonal Protective Order ("TIPO") and issued a summons for a hearing on June 19, 2023. (R. at 1-3.)

Both parties appeared at the hearing representing themselves *pro se*. The allegations in Phelps' petition were read aloud and Phelps indicated that she still wished for a long-term protective order and feared Taylor. (Video Record ("V.R."), June 19, 2023 Hearing – 9:59:00.)

Both parties testified that they had previously been in a romantic relationship and lived together, but after an incident on June 15, 2022, the parties ended the relationship and Phelps moved out. Phelps testified that she called law enforcement at that time due to her concerns with past unreported domestic

-2-

violence incidents. (V.R., June 19, 2023 Hearing – 10:01:10.) Taylor stated police were called after he began removing Phelps' clothes from a closet and denied any physical altercations. (V.R., June 19, 2023 Hearing – 10:04:30.)[1]

In late April 2023, the parties attempted to start a relationship again, though it was short lasted. (V.R., June 19, 2023 Hearing – 10:02:15.) Taylor testified that on May 11, 2023, he saw a group of motorcycles in a parking lot while driving around and approached them thinking Phelps was there, which she was.[2] He admitted to confronting her in the parking lot and "flicking" her helmet as she attempted to drive past him. Additionally, he admitted to following her to a nearby gas station and then to her home. (V.R., June 19, 2023 Hearing – 10:11:45.)

Taylor also testified about the incident in which he was walking around a parking lot with a bat on June 11, 2023, the day Phelps filed her petition for a protective order. Taylor stated he received a prank call from an unknown man, claimed he heard Phelps laughing in the background, and challenged the man to meet up to fight. He further testified that no one showed up at the location and he later went to a parking lot where some friends were and admitted to walking

---

[1] The parties also testified to having lived together in a hotel between November 2022 and January 2023, though Phelps indicated the parties were not in a relationship at that time. (V.R., June 19, 2023 Hearing – 10:08:00.)

[2] Both parties are actively engaged in the Lexington motorist community.

around it with a baseball bat in hand, claiming it was for protection. (V.R., June 19, 2023 Hearing – 10:05:40.)

Finally, Taylor testified about an incident a few weeks prior to June 11, 2023 in which he saw Phelps while driving and admitted to pulling up alongside her, motioning for her to talk to him, and attempting to contact her on his phone. (V.R., June 19, 2023 Hearing – 10:12:45.)

After hearing the testimony, the circuit court made oral findings that an act of domestic violence occurred and may occur again, specifically that Taylor had placed Phelps in fear of imminent physical injury. (V.R., June 19, 2023 Hearing – 10:15:45-10:16:50.) The circuit court entered a standard Administrative Office of the Courts ("AOC") Form 275.3 order of protection for entry of a DVO and found that "an act of domestic violence and abuse has occurred and may again occur." (R. at 27.) Additionally, the circuit court notated on a docket sheet accompanying the hearing which stated:

> Both parties present. Court took testimony from [Phelps] and [Taylor]. [Phelps] requests no contact 3 year IPO, including no 3rd party contact. [Taylor] admitted during sworn testimony that he has attempted to contact [Phelps] since the TIPO was entered. [Taylor] further admitted to following [Phelps], standing in the way of [Phelp's] moving motorcycle, "flicking" [Phelp's] helmet while [Phelps] was driving by, and being present at parking lot with baseball bat as described by [Phelps]. Court finds by a preponderance of the evidence that an act of DV has occurred and may occur again, specifically that [Taylor] placed [Phelps] in imminent fear of physical harm as

described in Petition and during testimony. 3 year no contact IPO entered mirroring terms in TIPO.

(R. at 26.)

This appeal followed. On appeal, Taylor argues that the circuit court abused its discretion by using the standard required for the entry of a DVO instead of that for an Interpersonal Protective Order (IPO) and that insufficient evidence existed for a finding of imminent physical injury. Phelps did not file a responsive brief.

## II. STANDARD OF REVIEW

This Court reviews the factual findings and entry of a DVO for clear error. *See* CR[3] 52.01; *Caudill v. Caudill*, 318 S.W.3d 112, 114 (Ky. App. 2010). A judgment is not clearly erroneous if it is supported by substantial evidence, which is "evidence of substance and relevant consequence having the fitness to induce conviction in the mind" of a reasonable person. *Owens-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998) (citations omitted). "[I]n reviewing the decision of a trial court the test is not whether we would have decided it differently, but whether the court's findings were clearly erroneous or that it abused its discretion." *Gomez v. Gomez*, 254 S.W.3d 838, 842 (Ky. App. 2008) (citations omitted).

---

[3] Kentucky Rules of Civil Procedure.

## III. ANALYSIS

To begin, we observe that Phelps failed to file an Appellee's brief herein. This Court may impose penalties under RAP[4] 31(H)(3); however, the decision whether to impose any penalties is within our discretion. *Roberts v. Bucci*, 218 S.W.3d 395, 396 (Ky. App. 2007). Considering the serious nature of domestic violence actions, we decline to exercise any penalties. *See Wright v. Wright*, 181 S.W.3d 49, 52 (Ky. App. 2005).

Taylor first asserts the circuit court incorrectly applied the DVO standard instead of the IPO standard.

"[T]he statute governing how the IPO statutes should be interpreted almost perfectly tracks the language of the statute governing how the DVO statutes should be interpreted. . . . Apart from who may file a petition for an IPO or DVO, the statutes governing the respective protective orders read and operate in much the same way." *Smith v. Doe*, 627 S.W.3d 903, 908-10 (Ky. 2021).[5] The statutory definitions of "domestic violence and abuse" and "dating violence and abuse" are nearly identical; both are "physical injury, serious physical injury, stalking, sexual abuse, strangulation, assault, or the infliction of fear of imminent physical injury,

---

[4] Kentucky Rules of Appellate Procedure.

[5] A petition for a DVO may be filed by a victim of domestic violence and abuse or by an adult of a qualifying minor. Kentucky Revised Statutes ("KRS") 403.725(1). A petition for an IPO may be filed by a victim of dating violence and abuse, a victim of stalking, a victim of sexual assault, or by an adult on behalf of a qualifying minor. KRS 456.030.

serious physical injury, sexual abuse, strangulation, or assault." *Compare* KRS 403.720 *with* KRS 456.010. The sole difference is domestic violence and abuse occurs between family members or members of an unmarried couple and dating violence and abuse occurs between persons who are or who have been in a dating relationship.[6]

The similarities between IPOs and DVOs can be seen in the process of obtaining them. Form petition AOC 275.1 is utilized by individuals seeking either. *See Taylor v. Fitzpatrick*, 659 S.W.3d 745, 748 (Ky. App. 2023). Following the identical processes outlined in KRS 403.730 or KRS 456.040, a petition is submitted to the court for review and the court has the option of entering a temporary protective order, which is either a TIPO or an emergency protective order ("EPO"), based upon the indicated relationship of the parties.

In this case, Phelps marked "currently or previously in a dating relationship" on her petition, and the circuit court subsequently entered a TIPO. However, as both parties affirmatively testified during the hearing, they formerly lived together as an unmarried couple prior to June 2022. Thus, it would have been appropriate for Phelps to have indicated "unmarried, currently or formerly living together" on her petition, and for the circuit court to enter an EPO.

---

[6] An unmarried couple includes a couple who are living together or formerly lived together. KRS 403.720.

Whether one temporary protective order was entered over the other is inconsequential to the circuit court's authority to enter a DVO or IPO after a proper hearing due to the functionally identical standards of DVOs and IPOs and a family court's concurrent jurisdiction. *See Calhoun v. Wood*, 516 S.W.3d 357, 360 (Ky. App. 2017) ("[T]he purpose and intent behind, and the interpretation of, the DVO statutes are almost identical to that of the IPO statutes."); *see also Taylor*, 659 S.W.3d at 748.

It is immaterial that the circuit court entered a DVO but indicated on the accompanying docket sheet that an IPO was entered. This Court has previously declined to consider the argument that an accompanying docket sheet indicating an IPO is to be entered trumps a DVO. *Benson v. Lively*, 544 S.W.3d 159, 162-63 (Ky. App. 2018). Furthermore, unlike the respondent in *Benson*, Taylor does not dispute that the parties lived together as an unmarried couple. Thus, the error is harmless and does not rise to the level of reversible error; at most, it constitutes a clerical mistake which the circuit court is at liberty to correct. *Id*. at 164; CR 60.01.

Considering the congruencies of the DVO and IPO statutes and the fact the parties both affirmatively testified to having formerly lived together as an unmarried couple, we determine the circuit court did not err in entering a DVO rather than an IPO.

We will next examine whether the evidence supports the findings made, namely if Phelps was placed in fear of imminent physical injury. A preponderance of the evidence in a proceeding for a protective order exists when the alleged victim was more likely than not to have been a victim. *Baird v. Baird*, 234 S.W.3d 385, 387 (Ky. App. 2007).

Pursuant to KRS 403.740, following a hearing conducted under KRS 403.730, a circuit court may enter an order of protection if it finds by "a preponderance of the evidence that domestic violence and abuse has occurred and may again occur." As mentioned in the analysis above, both phrases "domestic violence and abuse" and "dating violence and abuse" include the infliction of fear of imminent physical injury. KRS 403.720; KRS 456.010. "Physical injury" can mean any "substantial physical pain or any impairment of physical condition" or "[p]hysical damage to a person's body." *Petrie v. Brackett*, 590 S.W.3d 830, 835 (Ky. App. 2019) (citing KRS 500.080(13) and BLACK'S LAW DICTIONARY (11th ed. 2019)). "Imminent" means "impending danger, and, in the context of domestic violence and abuse . . . , belief that danger is imminent can be inferred from a past pattern of repeated serious abuse." KRS 503.010(3); *Collett v. Dailey*, 371 S.W.3d 777, 779 (Ky. App. 2011).

An infliction of fear of imminent physical injury does not require a finding that physical injury occurred. *Hohman v. Dery*, 371 S.W.3d 780, 782-83

(Ky. App. 2012). In *Hohman*, we held that the circuit court did not abuse its discretion when finding that an infliction of fear of imminent physical injury existed, though no physical injury occurred, based on the petitioner's testimony that she felt threatened by the respondent's aggressive body language, her belief that the respondent lacked the ability to control his emotions, and that she feared his behavior was going to escalate "to the next level." 371 S.W.3d at 782-83.

Taylor's actions in (1) flicking Phelps' helmet while she was operating a motorcycle and then following Phelps to multiple locations after being told she did not want to talk to him; (2) following Phelps in her car on another occasion; and (3) challenging someone who he believed was associated with Phelps to a fight and carrying around a baseball bat exhibit a similarly threatening nature as the actions of the respondent in *Hohman*. Therefore, we conclude Taylor's actions rise to the level of infliction of fear of imminent physical injury, and so the circuit court did not err when it found that an act of domestic violence occurred.

In determining if domestic violence may again occur, the circuit court considers the "totality of the circumstances and weigh the risk of future violence against issuing a protective order." *Pettingill v. Pettingill*, 480 S.W.3d 920, 925 (Ky. 2015).

Phelps described multiple instances when Taylor attempted to contact her even though she did not want to talk to him and alleged previous incidents of domestic violence while the parties were living together. Taylor also admitted to trying to contact her through third parties after the issuance of the TIPO, which the circuit court found notably concerning. (V.R., June 19, 2023 Hearing – 10:16:25.) Based on these actions, we do not believe the circuit court erred in finding that an act of domestic violence may again occur.

In this case, the circuit court thoroughly considered the testimony of both parties and the entirety of the evidence presented; it found Phelps to be credible in her testimony and chose to believe her. *See Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003).

## IV. CONCLUSION

In conclusion, we find the circuit court did not err in entering a DVO against Taylor and affirm its judgment.

ALL CONCUR.

BRIEF FOR APPELLANT:                    NO BRIEF FOR APPELLEE.

Derrick L. Harris
Lexington, Kentucky