RENDERED: JUNE 5, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-1368-ME

WILLIAM E. PARKER                                    APPELLANT

APPEAL FROM WARREN CIRCUIT COURT
v.        HONORABLE G. SIDNOR BRODERSON, SPECIAL JUDGE
ACTION NO. 24-D-00430-005

TANGELA S. BUTLER                                    APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  EASTON, ECKERLE, AND McNEILL, JUDGES.

McNEILL, JUDGE:  William E. Parker ("Parker") appeals, *pro se*, from the

Warren Circuit Court's entry of a domestic violence order ("DVO").[1]  Finding no

error, we affirm.

---

[1] Although neither party has raised the issue on appeal, there is some uncertainty in the record as to whether a DVO or interpersonal protective order ("IPO") should have been entered in this case.  DVOs are intended to protect family members or members of an unmarried couple (who are currently or have previously cohabitated), while IPOs are entered to protect individuals beyond those contemplated by the DVO statutes, such as those who are in a dating relationship but living apart, victims of stalking, or victims of sexual assault.  *Compare* Kentucky Revised Statutes ("KRS") 403.725(1) and 403.720(3), (6) *with* KRS 456.030(1) and KRS 456.010(1)-(2).

**BACKGROUND**

On September 5, 2025, Tangela S. Butler ("Butler") filed a petition in Warren Circuit Court seeking a protective order against Parker, her former boyfriend. The petition alleged that Parker had been repeatedly calling, texting, and emailing her harassing and threatening messages. One email, which she did not open, contained the subject line "kill." Later, Parker sent an email saying he was coming to her apartment. Other emails contained threats about Parker committing suicide. The petition further claimed Parker had sent text messages saying he wanted her to die. Butler said that Parker's actions have made her

---

There was no testimony at the hearing on the petition for a protective order concerning whether the parties had formerly cohabitated. The only evidence from the hearing was that the parties currently do not reside together. Other indications from the record are conflicting. On the one hand, on her AOC Form 275.1, petitioner selected "unmarried, currently or formerly living together" as her relationship to respondent, suggesting that she was seeking a DVO. And throughout the proceeding, the parties and court have generally used the terms "domestic violence" and "domestic violence order." However, on AOC Form 275.2, the court checked the box for a temporary interpersonal protective order instead of an emergency protective order. And ultimately, when it entered a more permanent order of protection, the court selected IPO rather than a DVO on AOC Form 275.3 (despite checking the box that petitioner and respondent were "unmarried, currently or formerly living together). To further complicate things, when denying respondent's motion to amend the order of protection, the court checked the box for DVO on a second AOC Form 275.3. Functionally, "the statutes governing [IPOs and DVOs] read and operate in much the same way." *Smith v. Doe*, 627 S.W.3d 903, 910 (Ky. 2021); *see also Calhoun v. Wood*, 516 S.W.3d 357, 360 (Ky. App. 2017) ("[T]he purpose and intent behind, and the interpretation of, the DVO statutes are almost identical to that of the IPO statutes."). Therefore, regardless of whether the court should have entered an IPO or DVO, any error is harmless and is, at most, a clerical mistake that the court can correct at any time. *Benson v. Lively*, 544 S.W.3d 159, 164 (Ky. App. 2018); Kentucky Rules of Civil Procedure ("CR") 60.01. For purposes of the appeal, we will assume the entry of the IPO was a clerical error and treat it as a DVO.

fearful for her life. The court granted a temporary protective order and set the matter for a hearing on September 15, 2025.

At the hearing, Butler testified that she is fearful for her health and safety. Parker has told her that every time he wakes up, he wishes she would die. She claimed she does not know what he is capable of. He tells her to apologize for things he accuses her of doing, or he is going to kill himself. He drops off unwanted items at her apartment and has taken a photo of himself standing outside. Now, when she leaves her apartment, she looks around, wondering if he is there.

This has been going on for three months, and she just wants him to stop sending all the emails. She already had to change her phone number so Parker could no longer call her. Most recently, on September 2, Parker sent an email saying he was on his way to her apartment, and that he is waiting for her, despite a protective order being in place. Butler testified that although Parker has never physically harmed her before, she does not know what he is capable of.

Parker denied calling or texting Butler 200 times, as alleged in the affidavit. He acknowledged that he has delivered groceries or flowers to her apartment in the past but has stopped that. He also admitted he has sent her emails but never any about harming her. Most have been about his no longer wanting to be with her. Parker claimed he is not a threat to anyone.

Following the testimony, the circuit court made the following oral findings from the bench:

> The Court finds that it has been established by a preponderance of the evidence that acts of domestic violence and abuse have occurred and may again occur. I find that Mr. Parker has communicated with Ms. Butler an excessive number of times, and one of them was an email, the title of it was "kill," and in that and other places I have read in here, he talks about killing himself and so forth, and Ms. Butler has testified that this sort of behavior—this excessive texting and talk of killing himself and so forth—um makes her fearful of him, so based on that I will enter the domestic violence order
> . . . .

Subsequently, the court entered a written order specifically incorporating its oral findings. The court granted Butler a DVO, prohibiting Parker from committing further acts of abuse or threats of abuse, stalking, or sexual assault, from any unauthorized contact with Butler, and from being within 500 feet of Butler or her residence. This appeal followed.

## STANDARD OF REVIEW

"When reviewing a decision on a DVO petition, the test is not whether we would have decided it differently, but whether the court's findings were clearly erroneous or that it abused its discretion." *Johnston v. Johnston*, 639 S.W.3d 428, 432 (Ky. App. 2021) (internal quotation marks and citation omitted). Findings are not clearly erroneous if they are supported by substantial evidence. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003). "Abuse of discretion occurs

-4-

when a court's decision is unreasonable, unfair, arbitrary or capricious." *Dunn v. Thacker*, 546 S.W.3d 576, 578 (Ky. App. 2018) (citing *Kuprion v. Fitzgerald*, 888 S.W.2d 679, 684 (Ky. 1994)).

## ANALYSIS

On appeal, Parker essentially argues there was insufficient evidence to support the entry of the DVO. Specifically, he contends the court erroneously relied upon unsubstantiated allegations and an isolated statement of self-harm to grant the DVO. He also claims there was no evidence that dating violence "may again occur," as required by statute. He concedes these arguments are not preserved and therefore requests palpable error review pursuant to CR 61.02, which provides in part:

> A palpable error which affects the substantial rights of a party may be considered . . . by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

"[M]anifest injustice is a significant burden." *R.S. v. Commonwealth*, 423 S.W.3d 178, 188 (Ky. 2014). Manifest injustice is found only if the "error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Martin v. Commonwealth*, 207 S.W.3d 1, 4 (Ky. 2006), *as modified* (May 23, 2006) (citation omitted). "To discover manifest injustice, a reviewing court must plumb the

depths of the proceeding . . . to determine whether the defect in the proceeding was shocking or jurisprudentially intolerable." *Id.*

A court may enter a DVO if it finds "by a preponderance of the evidence that domestic violence and abuse has occurred and may again occur[.]" KRS 403.740(1). "The preponderance of the evidence standard is satisfied when sufficient evidence establishes the alleged victim was more likely than not to have been a victim of domestic violence." *Caudill v. Caudill*, 318 S.W.3d 112, 114 (Ky. App. 2010) (citation omitted). "Domestic violence and abuse" is further defined by statute as "physical injury, serious physical injury, stalking, sexual abuse, strangulation, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, strangulation, or assault between family members or members of an unmarried couple[.]" KRS 403.720(2).

Parker contends the circuit court erroneously relied upon unsubstantiated allegations in granting the DVO. He points out that the petition claims that he sent over 200 text messages and phone calls saying he wanted Butler to die, but there is no documentary evidence supporting these allegations. He also faults the court for relying upon a "stale" communication—the email with the subject line "kill"—sent four months prior to the filing of the petition, in finding dating violence had occurred. But Parker's argument rests on faulty assumptions.

In addition to the petition's allegations, Butler testified that Parker told her that "every time he wakes up, he wishes she would die." Butler's sworn "testimony *is* evidence[.]" *Bob Hook Chevrolet Isuzu, Inc. v. Commonwealth Transp. Cabinet*, 983 S.W.2d 488, 492 (Ky. 1998) (emphasis added). And while the email with the subject line "kill" may have been four months old, that fact is only relevant if the court's finding of domestic violence was based on fear of *imminent* physical injury. *See Fraley v. Rice-Fraley*, 313 S.W.3d 635, 640 (Ky. App. 2010) (quoting KRS 503.010(3)) (internal quotation marks omitted) ("For purposes of KRS 403.720, the term '[i]mminent' means impending danger[.]"). Parker assumes that the court based its finding of domestic violence on his suicide threats causing Butler fear of imminent physical injury, but this is unclear from the record. Even if true, we find no palpable error, because we can affirm the circuit court for any reason supported by the record, *Mark D. Dean, P.S.C. v. Commonwealth Bank & Trust Co.*, 434 S.W.3d 489, 495-96 (Ky. 2014), and here, substantial evidence supports the circuit court's finding that domestic violence has occurred and may again occur.

The statutory definition of "domestic violence and abuse" also includes stalking. KRS 403.720(2). To be entitled to a DVO based upon stalking, a victim must prove by a preponderance of the evidence that "an individual intentionally engaged in two or more acts directed at the victim that seriously

-7-

alarmed, annoyed, intimidated, or harassed the victim, that served no legitimate purpose, and would have caused a reasonable person to suffer substantial mental distress, and that these acts may occur again." *Halloway v. Simmons*, 532 S.W.3d 158, 162 (Ky. App. 2017) (citations omitted) (giving grounds for IPO for stalking).[2] "Additionally, the individual must prove that there was an implicit or explicit threat by the perpetrator that put the victim in reasonable fear of sexual contact, physical injury, or death." *Id.* (citation omitted).

Here, there was sufficient evidence of stalking to support the entry of the DVO. Exhibits introduced at the hearing show that Parker's continuous emails and phone calls to Butler served no legitimate purpose other than to alarm, annoy, intimidate, or harass her. One of the emails says, "I am not going to stop until you confess." In a text, Parker threatens to "open up my auto-redialer [sic] app since you don't want to tell me who was the man laughing in the background." A screenshot of Butler's phone shows sixty-seven missed calls from Parker.

Another message from Parker says, "I am going to your apartment now. Walking up the stairs. I can stand here. No problem." Included is a photo of Butler's apartment door, apparently taken by Parker as he was standing outside.

---

[2] Because "stalking" is a recent addition to the definition of "domestic violence and abuse" and is undefined in the related statutes, it is appropriate to borrow the definition of "stalking" contained in the similar IPO statutes. *See Calhoun*, 516 S.W.3d at 360 ("It appears the purpose and intent behind, and the interpretation of, the DVO statutes are almost identical to that of the IPO statutes."); KRS 456.010(8).

Another message states, "I dropped the flowers off and could have stayed until 10 pm because I know your routine." This behavior would have caused a reasonable person to suffer substantial mental distress. Especially considering Butler's testimony that Parker told her that every time he wakes up, he wishes she would die, which is, at least, an implicit threat that put Butler in reasonable fear of physical injury or death.

Finally, Parker argues the evidence was legally insufficient to establish that domestic violence occurred and may again occur under KRS 403.740(1). He faults the court for believing Butler's testimony that he told her he wanted her to die without documentary evidence. Essentially, Parker disagrees with the court's weighing of the evidence. However, "the family court is in the best position to judge the credibility of the witnesses and weigh the evidence presented." *Hamilton v. Milbry*, 676 S.W.3d 42, 46 (Ky. App. 2023).

And to the extent Parker is challenging the court's finding that domestic violence may again occur, this finding was supported by substantial evidence. Parker has already told Butler in multiple emails that he will not stop. Further, Butler testified that on September 2, Parker emailed her that he was on his way to her apartment, despite the temporary protective order being in place. "The predictive nature of the standard requires the family court to consider the totality of

the circumstances and weigh the risk of future violence against issuing a protective order." *Pettingill v. Pettingill*, 480 S.W.3d 920, 925 (Ky. 2015).

## CONCLUSION

In sum, having considered Parker's arguments and having reviewed the record, we find neither palpable error nor manifest injustice. Accordingly, the DVO entered by the Warren Circuit Court is affirmed.

ALL CONCUR.

BRIEF FOR APPELLANT:                    NO BRIEF FOR APPELLEE.

William Parker, *pro se*
Bowling Green, Kentucky