**Denise HALLOWAY, Appellant**

v.

**James Edgar SIMMONS, Appellee**

**NO. 2017-CA-000019-ME**

Court of Appeals of Kentucky.

SEPTEMBER 29, 2017; 10:00 A.M.

BRIEF FOR APPELLANT: Erin S. Kennedy Startzman, Louisville, Kentucky.

BRIEF FOR APPELLEE: James L. Theiss, LaGrange, Kentucky.

BEFORE: MAZE, STUMBO, AND TAYLOR, JUDGES.

## OPINION

MAZE, JUDGE:

This appeal arises from an Interpersonal Protective Order (IPO) entered by the Oldham Circuit Court to prevent Denise Halloway, Appellant, from stalking James Simmons, Appellee. As the record shows the trial court's findings of fact were clearly erroneous and application of law was flawed, we reverse.

## Background

Halloway and Simmons were involved in a dating relationship and lived together in Simmons's house beginning in 2014. In November 2015, their relationship ended and Halloway moved out of Simmons's home. Simmons alleged that during their relationship in 2015, Halloway physically assaulted him at Belterra Casino. Halloway denied physically assaulting him. After their breakup, they did not continue seeing each other.

On April 13, 2016, Simmons was at Captain's Quarters Restaurant on River Road enjoying drinks at the bar with Susan, a woman he had invited out for drinks. Halloway and Simmons saw each other as she walked through the restaurant to the outside area where she was to board the restaurant's yacht for an Easter dinner cruise. She was accompanied by her new boyfriend. Testimony was offered that Simmons was annoyed at seeing Halloway with her new boyfriend. Simmons, who drives as his personal car a limousine with his nickname, "Jimbo1," on the license plate, contends that Halloway knew he was in the restaurant because she would have recognized his vehicle parked out front.

Then, on May 12, 2016, Halloway had dinner with her boyfriend and another friend at the River House Restaurant and Raw Bar on River Road, before going to the attached Levee Restaurant and Bar for after dinner drinks. Simmons was at Levee. Halloway alleges that there was a verbal altercation at the restaurant during which Simmons verbally assaulted her. The record indicates that Simmons repeatedly texted Halloway that night, using explicit and degrading language. The following day, Simmons sent Halloway's son a similar message. He also contacted the deacon at her church.

In response to Simmons's actions at Levee and the text messages he sent afterwards, Halloway sought and was issued an Emergency Protective Order ("EPO") in Jefferson County on May 13, 2016. Simmons violated this EPO on May 18, 2016, when he sent her a text message, that he contends was only sent on accident. On May 24, 2016, a Jefferson County court granted Halloway a Domestic Violence Order which prohibited Simmons from perpetrating further acts of abuse or contacting her, and he was to remain at all times 500 feet away from Halloway.

Simmons faced misdemeanor charges in Jefferson County arising from his violation of the EPO. He had a pre-trial conference for these charges on June 13, 2016. The next day, on June 14, 2016, Simmons sought an IPO against Halloway in Oldham County.

In his petition, Simmons accused Halloway of "targeting [his] location and coming in to such establishment[s] to cause further c[h]aos in [his] life." He also stated that, "[s]he is a pathological liar and I feel I need some type of protection for me so she [doesn't] abuse and manipulate the system by targeting my location." This temporary order was granted, prohibiting Halloway from "stalking" him, requiring her to stay 300 hundred feet away from him, and requiring "respondent to withdraw from the presence of petitioner if she enters a location where he has first occupied."

On August 5, 2016, the trial court granted Simmons's petition for the IPO. At the hearing, Simmons testified and called one witness, Susan, and Halloway testified and called two witnesses, her son and a friend of both parties who witnessed Simmons's reaction at Captain's Quarters. The evidence presented all centered around the events at Belterra, Captain's Quarters, and Levee, and included the text messages

sent by Simmons. After hearing the evidence, the trial court stated,

> [t]he evidence presented today is disturbing ... I think both of you share some culpability ... I am going to enter an order for one year that respondent remain away from petitioner ... that if you appear anywhere and you see that he's there, that you are to leave ... it is basically going to work both ways because [Simmons is] already under an order from Jefferson County.

Halloway's counsel then asked the court for a specific basis for the finding, to which the court responded, "the conduct of your client clearly speaks to me that she's intentionally trying to put Mr. Simmons in a situation that causes him issues, concerns, and fears." Halloway's counsel then asked, "fear of physical injury or death?" The court responded, "fear of ... um ... um ... yes, we'll say fear of physical harm."

After the IPO was granted, Halloway, through counsel, filed a motion to vacate. Simmons, through counsel, responded, and Halloway's counsel filed a reply on September 26, 2016. The trial court denied the motion to vacate and stated in the Order that,

> [a]fter proof taken in open court from both parties, the Court found by a preponderance of the evidence stalking by the Respondent against the Petitioner. The evidence included a past assault perpetrated by the Respondent against the Petitioner and two acts of the Respondent showing up at locations at which the Petitioner was obviously present. Furthermore, the Respondent made a comment during the hearing that the [Petitioner's] known presence at an establishment would not prevent her from going into that establishment. Again, the Court found based upon the evidence

pres[ented] stalking by Respondent and entered an IPO.

This appeal follows.

## Standard of Review

A circuit court's findings of fact will only be disturbed if clearly erroneous. CR [1] 52.01; *Cherry v. Cherry*, 634 S.W.2d 423, 425 (Ky. 1982). A finding of fact is clearly erroneous if it is not supported by substantial evidence. *Hunter v. Hunter*, 127 S.W.3d 656, 659 (Ky. App. 2003). "Substantial evidence is evidence, when taken alone or in light of all the evidence, which has sufficient probative value to induce conviction in the mind of a reasonable person." *Id.*, citing *Owens-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998); *Sherfey v. Sherfey*, 74 S.W.3d 777, 782 (Ky. App. 2002). We review questions of law *de novo. Id.*

## Analysis

On appeal, Halloway contends that the trial court erred in granting the IPO without a sufficient factual basis for finding that stalking had occurred and may occur again, and that the trial court improperly relied on hearsay statements.

IPO statutes are relatively new and were enacted by the legislature in January 2016. An IPO allows a victim of dating violence and abuse, as well as victims of stalking or sexual assault (regardless of the presence of a past or current dating relationship), or an adult on behalf of a minor victim, to petition for protection against their perpetrator. KRS [2] 456.030(1). The IPO statutes are codified in KRS 456. If the court "finds by a preponderance of the evidence that dating violence and abuse, sexual assault, or

---

1.  Kentucky Rules of Civil Procedure.

2.  Kentucky Revised Statutes.

stalking has occurred and may again occur, the court may issue an interpersonal protective order." KRS 456.060(1). Under KRS 456.010(7), " '[s]talking' refers to conduct prohibited as stalking under KRS 508.140 or 508.150." Stalking in the second degree, KRS 508.150(1), requires that an individual intentionally,

(a) Stalks another person; and

(b) Makes an explicit or implicit threat with the intent to place that person in reasonable fear of:

1. Sexual contact as defined in KRS 510.010;

2. Physical injury; or

3. Death

There, stalking is defined in KRS 508.130 as meaning,

(1) (a) To engage in an intentional course of conduct:

1. Directed at a specific person or persons;

2. Which seriously alarms, annoys, intimidates, or harasses the person or persons; and

3. Which serves no legitimate purpose.

(b)The course of conduct shall be that which would cause a reasonable person to suffer substantial mental distress.

Where "course of conduct" means two or more acts, to show a pattern of conduct. KRS 508.130(2).

To summarize, for an individual to be granted an IPO for stalking, he or she must at a minimum prove by a preponderance of the evidence that, an individual intentionally engaged in two or more acts directed at the victim that seriously alarmed, annoyed, intimidated, or harassed the victim, that served no legitimate purpose, and would have caused a reasonable person to suffer substantial mental distress, and that these acts may occur again. KRS 508.130 and KRS 456.060. Additional-

ly, the individual must prove that there was an implicit or explicit threat by the perpetrator that put the victim in reasonable fear of sexual contact, physical injury, or death. KRS 508.150.

Here, Simmons testified that he was afraid Halloway would intentionally go to places he was in order to have him arrested for violation of the Jefferson County DVO. However, he did not allege this had ever actually happened. To support this position, he offered evidence of the two incidents in which Halloway visited Captain's Quarters and Levee while he was also present, though these incidents happened prior to the DVO being granted. In fact, the DVO arose out of Simmons's conduct towards Halloway at the Levee. Simmons also stated that he had been told that Halloway would have him arrested any chance she had. Additionally, he cited to the alleged 2015 incident at Belterra as proof of a physical assault, though no police report or protection order was taken at that time.

The facts in this case clearly and unequivocally do not meet the elements of stalking, and therefore did not meet the IPO stalking standard. Halloway, at the time of the Captain's Quarters and Levee incidents was free to go wherever she wanted, regardless of whether Simmons was present at the establishment or not. The mere fact that Simmons may have been jealous of Halloway and her new relationship, and that seeing her upset him, does not meet the stalking standard of causing a "reasonable person to suffer substantial mental distress."

■ After the DVO was granted, Halloway remained free to go wherever she wanted. It was Simmons, the perpetrator of domestic violence, who was restrained from going within 500 feet of Halloway. Therefore, the court's finding that "the

Respondent made a comment during the hearing that the [Petitioner's] known presence at an establishment would not prevent her from going into that establishment" as support for the court's issuance of an IPO, was an errored application of law. Halloway was free to go into any establishment regardless of Simmons' presence. It was Simmons who would need to leave.

Similarly, Simmons's fear of being arrested for violation of the DVO is not sufficient to meet the elements of stalking. Fear of being arrested for violating a DVO is likely not uncommon, and some may argue fear of arrest is one, if not the only, factor that causes a DVO to be effective. On his petition for the IPO, Simmons stated that, "[s]he is a pathological liar and I feel I need some type of protection for me so she [doesn't] abuse and manipulate the system by targeting my location." He did not allege that Halloway had targeted him since the DVO was entered, only that he was afraid she would. This fear does not satisfy the required fear element of stalking.

 At the hearing, when asked for a specific factual finding by Halloway's counsel, the trial court responded, "the conduct of your client clearly speaks to me that she's intentionally trying to put Mr. Simmons in a situation that causes him issues, concerns, and fears." Halloway's counsel then asked, "fear of physical injury or death?" The court responded, "fear of . . . um . . . um . . . yes, we'll say fear of physical harm." This finding of fact was clearly erroneous and not supported by substantial evidence.

While the facts in this case clearly do not support the issuance of an IPO, we note that obviously under a different fact pattern the result could be different. Under the facts presented herein, the elements of stalking were not met. Furthermore, KRS 403.745(5) allows Simmons to seek modification of the DVO if it is unreasonably burdensome. Because the elements of stalking were not met, we need not address Halloway's arguments concerning the element requiring that stalking may occur again. Similarly, we need not address whether the trial court improperly relied on hearsay statements.

### Conclusion

For the reasons discussed, we reverse the trial court and order that the IPO be vacated.[3]

ALL CONCUR.

---

**3.** We note that the IPO expired August 5, 2017. While the expiration of an order appealed would normally render an appeal moot, this appeal meets the "collateral conse-quences" exception to mootness. *Calhoun v. Wood*, 516 S.W.3d 357, 359-60 (Ky. App. 2017).