RENDERED: JANUARY 28, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0629-ME

TIA R. HILL                                                          APPELLANT

v.
APPEAL FROM HARDIN CIRCUIT COURT
HONORABLE PAMELA ADDINGTON, JUDGE
ACTION NO. 21-D-00172-001

JENNIFER L. CARNAGIO                                        APPELLEE

OPINION
VACATING

** ** ** ** **

BEFORE: CALDWELL, MAZE, AND McNEILL, JUDGES.

CALDWELL, JUDGE: Tia R. Hill appeals from an interpersonal protective order

(IPO) granted to Jennifer L. Carnagio against Hill by the Hardin Family Court.

For the reasons stated herein, we vacate as the IPO was improperly issued.

## FACTUAL AND PROCEDURAL HISTORY

According to Carnagio's voluntary statement attached to her petition

for an IPO, Hill came to Carnagio's residence, complaining Carnagio and others

were too loud.  Carnagio alleged that Hill grabbed Carnagio's hair, threw Carnagio to the ground, and hit Carnagio on the back of her head and in the mouth. Carnagio further asserted that Hill would not listen to Carnagio's pleas for Hill to stop, that children were awakened and witnessed the action, and that Hill had no right to hit Carnagio.  But Carnagio's statement did not describe any history between Hill and Carnagio other than this one-time alleged incident.

The Hardin Family Court entered a temporary IPO and Hill was summoned to appear before the family court for a scheduled hearing several days later.  Under the terms of the temporary IPO, Hill was ordered to stay at least 500 feet from Carnagio and Carnagio's residence, to have no contact with Carnagio, and to refrain from committing further acts of actual or threatened abuse, sexual assault, or stalking.  This order, entered on April 8, 2021, stated it was effective until the date of the scheduled hearing, April 19, 2021.

Hill, who was represented by counsel, quickly filed a petition to amend.  She requested that the family court's order be amended to require that she stay just 100 feet from Carnagio rather than 500 feet away, or in the alternative, for a simple no-contact order.  She stated that she and Carnagio did not live together, but they lived in different apartments in the same apartment complex.  She also asserted that she and Carnagio were not relatives, were not in a dating relationship, and did not have any children together but were simply "neighbors who were

involved in an altercation." (Record (R.), p. 12). She alleged that she had been served with the temporary IPO at 10:00 PM and was told to leave her apartment – so she was forced to spend the night in her vehicle with her child. She asked to be allowed to stay in her apartment until the hearing. Apparently, nothing was entered in the written record between the filing of this motion to amend and the hearing previously scheduled for April 19, 2021.

The family court conducted the scheduled hearing via Skype on April 19, 2021. Hill attended the teleconference hearing with her counsel. Carnagio, who was not represented by counsel, was also in attendance. The hearing lasted around ten minutes without any evidence being formally taken. And unfortunately, numerous technical difficulties occurred.

During this brief hearing, the family court recognized Hill's argument that the terms of the temporary IPO posed a substantial hardship because Hill lived in the same apartment complex as Carnagio and Hill's request for reconsideration of the temporary IPO. Affirming that this was the relief requested in the written motion, Hill's counsel also orally asserted Hill's requests for additional relief – to "dismiss the charges" or to "dismiss that order." (Although we have quoted the exact language of the oral requests for relief, perhaps these requests might also be construed as a request for dismissal of the petition for an IPO and/or dismissal of the case before the family court.)

The family court judge stated she would modify the terms to include no footage restrictions so that Hill could go into her apartment, but she would still grant an IPO ordering Hill to have no contact with Carnagio. Hill's counsel began to argue that Hill and Carnagio were simply neighbors and that their situation did not fit requirements for granting an IPO. The family court judge opined that neighbors should act neighborly and that Hill's allegedly hitting Carnagio did not sound neighborly but more like a criminal offense. Hill's counsel noted that there was also a criminal action pending and the family court judge stated that was "even more reason that I probably need to grant a protective order . . . fourth-degree assault."

The family court again stated that a no-contact IPO without footage restrictions would be granted. Hill and her counsel attempted to say something, and the judge indicated Hill should discuss the matter with her attorney. The judge also asked Carnagio if she understood the IPO would be granted – albeit with no footage restrictions.

Carnagio expressed appreciation to the judge. And she mentioned that she believed Hill had violated the prior order (the temporary one) by coming on the property (apparently referring to Hill's apartment) to remove some items. She acknowledged Hill had not done anything else wrong when removing items, but she expressed concerns about Hill not following the rules in doing so. The

judge said if she had been aware of that, she would not have removed the restrictions. And she proceeded to advise Hill and counsel about the consequences of not following court orders before abruptly concluding the hearing by stating she was now disconnecting.

A few days after the hearing, the family court entered a final IPO barring Hill from having contact with Carnagio and Carnagio's children for three years. On the first page of the IPO form, the family court checked boxes indicating its awareness that none of the specified relationships applied[1] but that Hill was alleged to have committed stalking. On the second page of the IPO form, the family court checked boxes indicating a finding by a preponderance of the evidence that acts of stalking had occurred and might occur again.

The IPO also specifically noted that Hill could return to her apartment despite the prohibition against any contact with Carnagio or her children. And the IPO stated that the family court expressly and specifically incorporated its findings of fact and conclusions of law "announced on the record as set forth hereinabove . . . as if written in full." (R., p. 22) (citing *Boone v. Boone*, 463 S.W.3d 767, 768

---

[1] A portion of the form contained boxes to check, if applicable, regarding whether the petitioner and respondent were current or former spouses; had a child together; currently or formerly lived together; were currently in or had previously been in a dating relationship; or had a parent/child, stepparent/child, or grandparent/grandchild relationship. None of these boxes were checked for this case.

(Ky. App. 2015) and *Kindred Nursing Centers, Ltd. Partnership v. Sloan*, 329

S.W.3d 347, 349 (Ky. App. 2010)).

Hill timely filed her notice of appeal and her appellant's brief.

Carnagio did not file an appellee brief.

**Limitations Posed by the Lack of an Appellee Brief**

As stated in Kentucky Rules of Civil Procedure (CR) 76.12(8)(c):

> If the appellee's brief has not been filed within the time
> allowed, the court may: (i) accept the appellant's
> statement of the facts and issues as correct; (ii) reverse
> the judgment if appellant's brief reasonably appears to
> sustain such action; or (iii) regard the appellee's failure
> as a confession of error and reverse the judgment without
> considering the merits of the case.

Nonetheless, we also have discretion to decline to exercise any of the

options listed in CR 76.12(8)(c). *See Roberts v. Bucci*, 218 S.W.3d 395, 396 (Ky.

App. 2007) (declining options in CR 76.12(8)(c) given presentation of issues of

first impression meriting substantive consideration). Even when we do not opt to

exercise any of the options listed in CR 76.12(8)(c), however, our review is

somewhat constrained when an appellee does not respond to legal arguments or the

appellant's statement of the facts through filing an appellee brief. *See Hawkins v.

Jones*, 555 S.W.3d 459, 461 (Ky. App. 2018) ("Though we elect not to impose any

penalty upon [appellee who failed to file brief] in the present case, we strongly

suggest that the best practice is to file an appellee brief, as the failure to do so

exposes appellees to the penalties in CR 76.12(8)(c). Furthermore, although not specifically imposing a penalty, without a counterstatement of the facts, we are reliant on [appellant's] statement of the facts.").

We do not specifically elect any of the options provided in CR 76.12(8)(c). Instead, we have carefully reviewed the record on appeal as well as the appellant's brief and applicable law. Nonetheless, our understanding of the case may be somewhat limited by not having the opportunity to review the other "side of the story." The appellee, Carnagio, has missed her opportunity to advise us of any disagreements she might have with the appellant's (Hill's) factual statements and legal arguments. Notwithstanding Carnagio's missed opportunity to present any additional information or concerns to us, we conclude that we must vacate the IPO based upon our review of the record and applicable law.

## STANDARD OF REVIEW

When a party appeals from the entry of an IPO, we cannot disturb the lower court's findings of fact unless they are clearly erroneous – meaning not supported by substantial evidence. But we review questions of law under the non-deferential *de novo* standard. *Halloway v. Simmons*, 532 S.W.3d 158, 161 (Ky. App. 2017). In particular, statutory interpretation is a question of law subject to *de novo* review. *Jones v. Jones*, 617 S.W.3d 418, 423 (Ky. App. 2021).

## ANALYSIS

### Despite Lack of Preservation Statement, Basic Challenge to Validity of IPO Appears to Be Preserved

Hill challenges the IPO on several grounds in her brief. However, Hill's brief does not comply with CR 76.12(4)(c)(v), which requires in pertinent part that an appellant's brief must "contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner." We admonish counsel to take greater care to comply with appellate brief requirements in the future, as appellate courts may strike briefs or review only for manifest injustice where a proper preservation statement is not provided. *See* CR 76.12(8)(a) ("A brief may be stricken for failure to comply with any substantial requirement of this Rule 76.12."); *Ford v. Commonwealth*, 628 S.W.3d 147, 155 (Ky. 2021) (indicating that an appellate court may properly regard an argument on appeal as unpreserved and thus review only for manifest injustice[2] where the appellant fails to provide a statement regarding whether and how the argument was preserved for review,

---

[2] An appellate court may review unpreserved arguments for palpable errors affecting parties' substantial rights and grant relief if the errors would result in manifest injustice. *See* CR 61.02, Kentucky Rules of Criminal Procedure (RCr) 10.26. The Kentucky Supreme Court discussed RCr 10.26's reference to reviewing unpreserved errors for manifest injustice in *Ford*, 628 S.W.3d at 155 (a criminal case). Although CR 61.02 was not discussed in *Ford*, CR 61.02 (rather than RCr 10.26) applies to civil cases such as this and similarly allows for unpreserved arguments to be reviewed for palpable errors affecting substantial rights and for courts to grant relief if such errors result in manifest injustice.

although holding that reviewing for manifest injustice is an inappropriate sanction for violation of minor formatting rules).

For future reference, we direct counsel's attention to the basic appellate practice handbook and the appellant brief checklist on our court website. Both resources are available as PDFs at https://kycourts.gov/Courts/Court-of-Appeals/Pages/default.aspx (last visited Jan. 10, 2022).

Despite the lack of a direct preservation statement in the appellant's brief, a basic challenge to the validity of issuing an IPO in the present case was at least questionably raised to the family court based on our review of the recorded hearing. Hill's filed written motion was to amend, not dismiss or rescind, the original temporary IPO. Essentially the family court granted the relief requested in this written motion – specifically, to remove requirements that Hill stay a particular distance from Carnagio in order to permit Hill to remain in her apartment in the same complex as Carnagio. Yet based upon our review of the recorded hearing, Hill's counsel also orally requested that "the charges" or "that order" be dismissed and argued that requirements for granting an IPO were not met.

Although perhaps the family court judge could have been understandably confused by the reference to dismissing "charges" since no criminal charges were pending in her court, it was reasonably clear that Hill requested dismissal of the temporary IPO and/or dismissal of the petition for an

-9-

IPO and challenged the validity of issuing an IPO at all under these circumstances. We are unaware of any explicit objection to the court's issuing the IPO without conducting an evidentiary hearing based on our review of the record. Nonetheless, Hill asserted a basic challenge to the validity of issuing an IPO.

Despite the lack of required preservation statement and perhaps questionable preservation of certain issues raised by Hill on appeal, we are compelled to vacate the IPO entered by the family court.

**Statutory Requirements for Issuing Non-Temporary IPO Were Not Met**

Having carefully considered the appellant's brief and the record and applicable law, the IPO cannot stand under Kentucky law. We elect not to discuss every sub-argument advanced in Hill's brief, particularly given the lack of preservation statement and questionable preservation of some arguments in her brief. But we agree with Hill that the family court lacked authority under governing statutes to issue a non-temporary IPO upon allegations of a single violent incident – not related to sexual assault or dating violence and abuse – and without conducting an evidentiary hearing.

**Family Court Failed to Conduct Evidentiary Hearing Before Issuing IPO**

As we have reviewed the recording of the hearing (dated April 19, 2021) included in the record on appeal and as the record on appeal does not indicate that any additional hearings were conducted, the family court clearly

failed to conduct an evidentiary hearing before entering the IPO at issue on April 23, 2021. No evidence was presented at the April 19 hearing. No witnesses were sworn in or examined by counsel nor was any other evidence presented.

Instead, during this brief hearing, the family court agreed to grant the relief sought by Hill in her motion to amend (removing requirements that Hill must stay a particular distance from Carnagio) but rejected Hill's attempts to argue that there was no proper basis for an IPO to be entered. A few days after this brief hearing, the family court's written IPO was then entered into the record.

The family court's issuing the IPO at issue on appeal without conducting an evidentiary hearing violated governing statutes. As we recognized in *Halloway*, provisions regarding IPOs are found in Kentucky Revised Statutes (KRS) Chapter 456. 532 S.W.3d at 161.

Although a court might properly issue a temporary *ex parte* IPO effective in certain circumstances before conducting an evidentiary hearing under KRS 456.040(2), an evidentiary hearing is clearly required before a more permanent IPO (such as the three year no-contact IPO issued by the family court) is authorized under KRS 456.060.[3]

---

[3] Under certain circumstances, the terms of an *ex parte* temporary IPO may be extended for up to six months. *See generally* KRS 456.050. But an IPO issued pursuant to KRS 456.060 may be effective for up to three years and may be reissued for additional three-year periods upon its expiration. KRS 456.060(3).

A court must review a petition for an IPO[4] and if review indicates the existence of dating violence/abuse or sexual assault or stalking, the court must summon the parties to an evidentiary hearing. KRS 456.040(1). A court may issue an *ex parte* temporary IPO **pending** the scheduled evidentiary hearing if its review of the petition for IPO "indicates the presence of an immediate and present danger of dating violence and abuse, sexual assault, or stalking[.]" KRS 456.040(2). But a court may issue a non-temporary IPO only after "a hearing ordered under KRS 456.040" – *i.e.*, an evidentiary hearing – and only upon finding, by a preponderance of the evidence, "that dating violence and abuse, sexual assault, or stalking has occurred and may again occur . . . ." KRS 456.060(1).

Though the family court's written IPO ostensibly indicates (at least by checking boxes) that it found stalking by a preponderance of the evidence, the family court clearly did not comply with statutory requirements for conducting an evidentiary hearing before issuing a non-temporary IPO. Furthermore, as no evidence was presented at the hearing, there is no substantial evidence to support any finding of fact that stalking had occurred and thus any such finding of fact is clearly erroneous. *See Halloway*, 532 S.W.3d at 161 ("A finding of fact is clearly erroneous if it is not supported by substantial evidence.").

---

[4] *See* KRS 456.030 (regarding petitions for IPOs).

**Alleged Violent Incident Does Not Meet Legal Definition of Stalking**

Instead of discussing Hill's argument that requirements for issuing an IPO were not met in terms of specific statutory provisions, the family court noted Carnagio's allegations of a violent act – leading to criminal charges of fourth-degree assault – and declared that this was all the more reason to grant an IPO near the end of the recorded hearing. But the family court did not discuss stalking nor make an oral finding that stalking had occurred or might occur again during the recorded April 19, 2021 hearing. In the IPO entered April 23, 2021, the family court checked a box indicating that it found, by a preponderance of the evidence, that stalking had occurred and might occur again.

Although we agree with Hill that the family court's finding of stalking is invalid due to lack of evidence of or even an allegation of a continuing course of conduct, we disagree with any argument that the lack of a special relationship between the parties, by itself, would preclude the issuance of an IPO for stalking. Even without a specified special relationship such as dating or cohabitation, a victim of stalking may fulfill requirements for obtaining an IPO under certain circumstances. *See Halloway*, 532 S.W.3d at 161 (citing KRS 456.030(1)) ("An IPO allows a victim of dating violence and abuse, as well as victims of stalking or sexual assault (regardless of the presence of a past or current dating relationship), or an adult on behalf of a minor victim, to petition for protection against their

-13-

perpetrator."); *Smith v. Doe*, 627 S.W.3d 903, 909-10 (Ky. 2021) (recognizing that unlike domestic violence orders (DVOs), IPOs are available to victims of dating violence or abuse, sexual assault, or stalking without having to show familial relationship with or being in an unmarried couple with perpetrator).[5] *See also Jones*, 617 S.W.3d at 424 (rejecting argument that language in KRS 456.010 indicated that only a petitioner who had previously dated the respondent could obtain an IPO for attempted sexual assault as: "To provide someone who is placed in fear of imminent sexual abuse the protection of an IPO simply because he or she is or has been in a dating relationship with his or her attacker but to bar protection for someone who has an identical experience but is not in a romantic relationship with his or her attacker would defy both common sense and the intent of the legislature.").

Carnagio was not necessarily precluded from seeking an IPO against Hill based on stalking due to their only relationship being neighbors in the same apartment complex. But though we in no way condone the type of violent incident alleged in Carnagio's statement accompanying her petition, this alleged one-time

---

[5] We recently upheld the issuance of an IPO based on stalking by a neighbor (with no other dating, familial or other special relationship with the victim noted) in an unpublished opinion – where apparently no argument was made on appeal that the lack of other relationship made the IPO invalid. *See Steward v. Buckman*, No. 2020-CA-1559-ME, 2021 WL 2484025 (Ky. App. Jun. 18, 2021). This unpublished case is not binding authority, and we do not cite it as such. *See* CR 76.28(4)(c). Instead, we simply note its existence.

incident simply could not support a finding of stalking under Kentucky law – because of the lack of a continuing course of conduct.

As this Court has previously noted, KRS 456.010(7) defines stalking as referring to the conduct prohibited by KRS 508.140 and KRS 508.150 (referring to the criminal offenses of first-degree stalking and second-degree stalking, respectively.) And for purposes of these statutes defining criminal stalking offenses, stalking requires a course of conduct consisting of at least two acts directed to the victim. *See Halloway*, 532 S.W.3d at 162 (citing KRS 508.130). KRS 508.130 defines *stalking* as entailing "an intentional course of conduct" and *course of conduct* as meaning a "pattern of conduct" consisting of at least two acts "evidencing a continuity of purpose."

A finding of such pattern of conduct consisting of at least two acts cannot be properly supported by the allegations in Carnagio's statement attached to her petition alone. Again, though we do not condone the type of violent incident alleged in her statement and though a victim of an isolated violent incident may understandably wish to seek protection to prevent similar future incidents, the family court lacked the authority under relevant statutes to issue an IPO (especially a non-temporary IPO) based solely on an (alleged) isolated instance of violence which did not involve sexual assault or dating violence and abuse.

-15-

There is simply no provision in KRS Chapter 456 which explicitly allows a court to issue an IPO for an isolated instance of violence which does not amount to sexual assault or dating violence and abuse. Again, though IPOs may be granted upon properly supported findings of stalking, stalking requires a continuing course of conduct consisting of at least two acts. Even assuming *arguendo* that Hill engaged in at least two discrete acts of violence by grabbing Carnagio's hair and throwing Carnagio to the floor and by hitting her on the back of her head and in her mouth, there was not even an allegation of a continuing course of conduct or pattern of conduct in the petition.

Furthermore, precedent indicates that IPOs for stalking are properly supported when the evidence shows violent and/or threatening action **on more than one occasion** over some period of time. *See Jones*, 617 S.W.3d at 425-26 (finding evidence sufficient to support finding of stalking based on course of conduct consisting of repeatedly sending threatening text messages, making other verbal threats, going to victim's home uninvited, and grabbing her and pulling her into a bedroom – even though these actions occurred over the relatively short time period of two days since no specific time period is required). *See also Calhoun v. Wood*, 516 S.W.3d 357, 361 (Ky. App. 2017) (upholding issuance of IPO for stalking consisting of repeated instances of the respondent coming to the petitioner's home and of his letting himself in on one such occasion and refusing to

leave until she talked to him, as well as other acts including damaging her vehicle's tire so she could not go to work).

Despite any good intentions in entering the IPO to offer protection after the alleged one-time violent incident as described by Carnagio, the family court failed to conduct a statutorily required evidentiary hearing before issuing the (non-temporary) IPO on appeal here. Furthermore, the isolated violent incident alleged in the petition, by itself, did not constitute stalking as defined in Kentucky law.[6] Thus, the IPO entered April 23, 2021 cannot stand.

## **CONCLUSION**

For the foregoing reasons, we vacate the IPO entered by the family court.

ALL CONCUR.

BRIEF FOR APPELLANT:                NO BRIEF FOR APPELLEE.

Aaron Kemper
Louisville, Kentucky

---

[6] KRS 456.040 provides that upon the initial review of the petition for an IPO, if there is no basis for finding stalking or sexual abuse or dating violence and abuse, "the court may consider an amended petition or dismiss the petition without prejudice." No amended petition was filed in the instant case and perhaps Hill's counsel's request to dismiss "charges" or "that order" at the hearing could be construed as a request to dismiss the petition.