RENDERED:  JANUARY 13, 2023; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0946-ME

CHRISTINA HOLT TAYLOR　　　　　　　　　　　　　　　APPELLANT

APPEAL FROM ALLEN FAMILY COURT
v.　　HONORABLE CATHERINE R. HOLDERFIELD, SPECIAL JUDGE
ACTION NO. 19-D-00066-001

LEIGH-ANN FITZPATRICK　　　　　　　　　　　　　　　　APPELLEE

OPINION
VACATING

** ** ** ** **

BEFORE:  CETRULO, DIXON, AND TAYLOR, JUDGES.

CETRULO, JUDGE:  Christina Holt Taylor, *pro se* appellant, ("Taylor") appeals

from an amended interpersonal protective order ("IPO") rendered by the Allen

Family Court on July 15, 2022.  In her brief, Taylor states that she is appealing

from a Warren County Family Court ruling.  In fact, this case remains with the

Allen County Family Court where it has been since at least 2019.  The matter is

simply pending before a "special judge" as all of the judges of Allen County were

disqualified or unable to serve due to Taylor's employment as a pretrial services officer. Taylor first asserts that such IPOs must be heard in the district court, and, secondly, generally asserts there was insufficient evidence to extend the protection order. This matter has a long history, including a prior appeal to this Court from the initial order of protection in 2019. For reasons addressed below, we vacate the latest order.

## FACTS AND PROCEDURAL HISTORY

In 2019, Leigh-Ann Fitzpatrick ("Fitzpatrick") filed a petition with the Allen Family Court, alleging that Taylor had stalked, harassed, and threatened her. The family court[1] conducted a hearing and heard proof from both parties, neither of whom were represented by counsel. The family court entered an IPO in August of that year, which barred Taylor from coming within 400 feet of Fitzpatrick and found Taylor guilty of stalking. That ruling resulted in the first appeal to this Court, wherein Taylor argued that the IPO violated the double jeopardy clause because Fitzpatrick had lodged a criminal complaint in district court on similar allegations. She also generally asserted that Fitzpatrick's allegations were false and that there was insufficient evidence to support the finding of stalking in the original IPO. This Court affirmed the family court.

---

[1] Judge Broderson recused himself based on the fact that he had a professional working relationship with Taylor, resulting in the reassignment to Judge Michael McKown.

The matter then proceeded with various filings by both parties, although it was ultimately transferred to a second "special judge."[2] All of the filings by the parties throughout this matter have been without assistance of counsel. Some hearings on temporary motions have been conducted, although the lack of counsel for either party has made them less than effective.

Regardless, Fitzpatrick most recently filed a motion to extend the IPO for three years, shortly before it was set to expire. The family court set the matter for hearing on July 11, 2022, and extended the IPO for three more years until July 2025. Taylor filed this second *pro se* appeal, and Fitzpatrick did not file an appellee brief.

Our review is certainly constrained when an appellee does not respond to the appeal by filing a brief. Kentucky Rule of Appellate Procedure ("RAP") 31(H)(3) provides this Court with options to impose penalties on the appellee and further requires us to primarily rely upon the appellant's statement of the facts. *See Hawkins v. Jones*, 555 S.W.3d 459 (Ky. App. 2018). However, the appellant's *pro se* brief does not fully comply with the Rules of Appellate Procedure either, which could similarly result in our imposition of sanctions. *See Ford v. Commonwealth*, 628 S.W.3d 147 (Ky. 2021). Nonetheless, we have elected to carefully review the

---

[2] The second special judge was Judge Catherine Holderfield; Judge McKown recused himself after Taylor filed a petition for a writ of mandamus.

-3-

entire record on appeal and the applicable law in the hope that both of these parties will cease their longstanding and frequent filings before the courts.

## STANDARD OF REVIEW

The standard of review for factual determinations is whether the finding of the family court was clearly erroneous. *Reichle v. Reichle*, 719 S.W.2d 442, 444 (Ky. 1986). Findings are not clearly erroneous if supported by substantial evidence. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (citation omitted). When a party appeals from the entry of an IPO, or in this case, an extension of the same, we cannot disturb the findings of the family court unless they are clearly erroneous, *i.e.*, not supported by substantial evidence. However, we review questions of law under the non-deferential *de novo* standard. *Jones v. Jones*, 617 S.W.3d 418, 423 (Ky. App. 2021) (citation omitted). This appeal raises both an issue of statutory interpretation or a question of law as to jurisdiction as well as a review of the sufficiency of evidence. We turn first to the question of law.

## LEGAL ANALYSIS

As referenced above, Taylor's *pro se* brief asserts that the family court had no jurisdiction and that an IPO can only be brought before a district court. She also generally alleges that she had been denied her right to a jury trial and that the allegations by Fitzpatrick were made in a previously-dismissed criminal complaint, resulting in a violation of the double jeopardy clause. As to the latter, it is clear

-4-

that this was the same argument presented to this Court in the prior appeal, so we will not address that further. As to the jurisdictional argument, it is clear that pursuant to KRS[3] 456.030(6)(a), "[j]urisdiction over petitions filed under this chapter [IPOs] shall be concurrent between the District Court and Circuit Court." Thus, concurrent jurisdiction over this matter does exist with the family court as well as with the district or any circuit court. *Smith v. Doe*, 627 S.W.3d 903, 910 (Ky. 2021) (citation omitted).

As stated in *Halloway v. Simmons*, 532 S.W.3d 158, 161 (Ky. App. 2017), IPO statutes are relatively new, having only been enacted by the legislature in January 2016. However, KRS Chapter 456 generally parrots the provisions of KRS Chapter 403 pertaining to family law matters. Indeed, the same form is utilized by the Courts for both IPOs and DVOs.[4] "An IPO allows a victim of dating violence and abuse, as well as 'victims of stalking' or sexual assault (regardless of the presence of a past or current dating relationship), or an adult on behalf of a minor victim, to petition for protection against their perpetrator." *Halloway*, 532 S.W.3d at 161 (citing KRS 456.030(1)). Family courts frequently consider IPOs, and the appellate courts have upheld the issuance of the same even where there is no other dating, familial or other special relationship with the

---

[3] Kentucky Revised Statute.

[4] Domestic violence orders.

victim. There is no basis for Taylor's assertion that the family court had no jurisdiction to extend the IPO. We turn next to the sufficiency of evidence to support the family court's ruling.

Fitzpatrick filed for an amended IPO on the basis of stalking by Taylor. The petition itself alleges that Taylor took pictures or videos of Fitzpatrick at a tennis match for Taylor's son "in order to intimidate me" in April of 2022. The "testimony" at the hearing was that Taylor had also walked within "arm's distance" of her in violation of the prior IPO at a separate school event one year earlier in May 2021. Under KRS 456.030(1), an alleged victim of stalking may file a petition for an IPO. However, after conducting an evidentiary hearing, the court may render an IPO only if it finds by a "preponderance of the evidence that . . . stalking has occurred and may occur again . . . ." KRS 456.060(1).

KRS 456.010(8) defines stalking as referring to conduct prohibited by KRS 508.140 and KRS 508.150 which refer, respectively, to the criminal offenses of first- and second-degree stalking. To be entitled to an IPO based upon stalking, the victim must demonstrate and prove by a preponderance of the evidence that:

> . . . an individual intentionally engaged in two or more acts directed at the victim that seriously alarmed, annoyed, intimidated, or harassed the victim, that served no legitimate purpose, and would have caused a reasonable person to suffer substantial mental distress, and that these acts may occur again.

*Halloway*, 532 S.W.3d at 162 (citing KRS 508.130 and KRS 456.060).

Additionally, the individual must prove that there was an implicit or explicit threat by the perpetrator that put the victim in reasonable fear of sexual contact, physical injury, or death. *Id.* (citing KRS 508.150). A court may issue an IPO if it finds "by a preponderance of the evidence that . . . stalking has occurred and may again occur." *Sewell v. Sweet*, 637 S.W.3d 330, 335 (Ky. App. 2021) (citing KRS 456.010(2)).

Having reviewed the entire record on appeal and our prior case law, this IPO is not supported by sufficient evidence of stalking. Similarly, in *Sewell*, we held that the family court's finding that stalking had occurred and was likely to occur again was not supported by substantial evidence. *Id.* at 336. In that instance, there had been no threats, implicit or explicit, to support the victim being in fear of physical injury. *Id.*

Likewise, in *Caudill v. Caudill*, 318 S.W.3d 112, 115 (Ky. App. 2010), this Court ruled that a visit by respondent to petitioner's workplace did not constitute domestic violence sufficient to satisfy the definitions of such contained within the statutes. Here, the family court simply checked a box finding that stalking had occurred. However, it did not provide written findings of fact and did not indicate that there were any threats made to Fitzpatrick, as defined by the statutes.

A trial court "speaks only through written orders entered upon the official record." *Kindred Nursing Ctrs. Ltd. P'ship v. Sloan*, 329 S.W.3d 347, 349 (Ky. App. 2010). "[A]ny findings of fact and conclusions of law made orally by the circuit court at an evidentiary hearing cannot be considered by this Court on appeal unless specifically incorporated into a written and properly entered order." *Id.* There are no written findings in this case. Statements made by the trial judge from the bench were not incorporated into the standard form used to enter the IPO.[5]

Based upon the hearing video, it is clear the family court was familiar with the parties and had made prior rulings concerning both parties and Taylor's ex-husband, who is now involved with Fitzpatrick. However, some of those rulings are not a part of this record. There were also references by both parties and the judge to a scheduled criminal trial concerning alleged violations of the IPO, which apparently did not occur.[6] We are cognizant of the difficulties upon family courts when the parties are unrepresented and the "proof" at the hearing is not properly presented nor compliant with evidentiary rules. We also recognize that

---

[5] In fact, there were statements made by the trial court in the oral record that are not reflected on the form signed by the court, which, for example, could result in future allegations of violation by either party that could not be verified by law enforcement.

[6] Appellant's brief asserts that there was a deferred prosecution proposal on those charges, but we do not have any documentation in the record, other than the statement that charges had been filed by Fitzpatrick, which were not yet resolved. The family court stated that the then-pending "charges" were "evidence" of IPO violations by Taylor, but we cannot agree.

the family court is in a better position to evaluate credibility. However, this does not negate the obligation upon the court to set forth findings and to determine if the elements of stalking were met by a preponderance of evidence.

In this instance, there was no testimony other than from the parties, and most of it was vague and simply reiterated alleged statements that had formed the basis for the original issuance of the IPO in 2019. For instance, Fitzpatrick stated that Taylor had threatened to kill her, but then acknowledged, upon questioning by the judge, that the threat was made before the first IPO was granted. This Court has already found there was sufficient evidence to support the initial issuance of the IPO in 2019. However, the former judge issued findings of fact and specifically noted there was testimony that Taylor had parked in front of Fitzpatrick's house, had flipped Fitzpatrick off on several occasions, had blown the car horn repeatedly, and had threatened to kill Fitzpatrick. While Taylor denied many of those allegations, the family court was free to judge the credibility of the parties and make those findings, which it did.

However, in this new three-year protective order, we have no written findings by the trial judge to support another extension and no evidence of any new threat. There was some mention of Taylor being behind Fitzpatrick and Taylor's ex-husband in a vehicle on a busy roadway. However, there was no testimony confirming that this violated the prior IPO or threatened Fitzpatrick. In fact, no

video evidence was presented to support this statement by Fitzpatrick, although she indicated it was available on her phone in the courtroom.

Again, Fitzpatrick lodged separate criminal charges against Taylor, but it appears that those charges were not pursued. Fitzpatrick referenced Tad Taylor, the appellant's former husband, being in the courtroom and having knowledge of this event, but he did not testify. She similarly complained of social media posts by a friend of Taylor, but that person was not a party to this proceeding. She stated that Taylor had taken pictures of her at a school event, but there was no evidence that this was in violation of the distance protection in effect.[7] Taylor denied that she took pictures of Fitzpatrick and maintained she was only taking photographs of her son.

No evidence in the form of videos or photographs was ever produced; no witnesses were called to support Fitzpatrick's statement; nor were any dates provided for most of the acts to which she alluded. She was emotional, but she did not prove any specific two or more instances of behavior that would constitute stalking, as defined by KRS 508.130. There was no testimony of <u>any</u> new threat that put the victim in reasonable fear of physical injury, an additional requirement of the statute. *See* KRS 508.150; *Halloway*, 532 S.W.3d at 162.

---

[7] In fact, the prior IPO had been amended on several occasions throughout the past three years to allow for a 50-foot "stay away" distance at school events that both parties attended, and the court stated in the most recent hearing that it was being adjusted to 25 feet.

This Court addressed the need for written findings in *Thurman v. Thurman*, 560 S.W.3d 884, 887 (Ky. App. 2018), which specified that a "court must make written findings to support the issuance of the DVO." A family court must show its rationale for the issuance of a protective order. *Id.*

In *Thurman*, we struck down a DVO consisting "entirely of the court's checking a single box on AOC Form 275.3 indicating it found" domestic violence. *Id.* "The court made no additional written findings, either on the form itself or the accompanying docket sheet." *Id.* This Court emphasized that "[a] family court is obligated to make written findings of fact showing the rationale for its actions taken under KRS Chapter 403, including DVO cases, even if the rationale may be gleaned from the record." *Id.* (citing *Keifer v. Keifer*, 354 S.W.3d 123, 125-26 (Ky. 2011); *Anderson v. Johnson*, 350 S.W.3d 453, 458-59 (Ky. 2011)). We believe that *Thurman* applies to orders under KRS Chapter 456 as well. A finding of fact is clearly erroneous if it is not supported by substantial evidence. *Halloway*, 532 S.W.3d at 161.

Unfortunately, in this second appeal, there were no written findings and the check of a single box on the AOC Form indicates only that Taylor was found to have been stalking. The form signed by the family court actually conflicts with some of her statements on the record. While we do not substitute our opinion for the trial judge, there must be a finding of a minimum of "two or more acts" to

-11-

constitute stalking. *See id.* at 162; KRS 508.130(2). There was no such finding made in this case.

In addition to the lack of written findings, the allegations by Fitzpatrick of stalking in 2022 simply do not constitute stalking as defined by KRS 508.130. The evidence does not rise to the level of a "course of conduct" directed at her which seriously alarms, annoys, intimidates, or harasses the person and serves no legitimate purpose and would cause a reasonable person to suffer substantial mental distress. She denied any new "threats" by Taylor and the taking of photographs at a school event, if it did occur, would not likely cause any reasonable fear of injury.

Moreover, those acts cannot simply be the same acts that were relied upon by the previous judge more than three years ago to support the initial order. Such protective orders hold serious ramifications for those who are restricted, as well as for the alleged victim, innocent children and, in this case, for schools and law enforcement. The IPO entered in this case is no better than the DVO struck down in *Thurman*. *See also Castle v. Castle*, 567 S.W.3d 908, 916 (Ky. App. 2019). For all the foregoing reasons, we reverse the Allen Family Court and vacate the IPO entered.

ALL CONCUR.

BRIEF FOR APPELLANT:                NO BRIEF FILED FOR APPELLEE.

Christina Holt Taylor, *pro se*
Scottsville, Kentucky