RENDERED:  JULY 12, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1391-ME

DARIUS BOWIE                                                                      APPELLANT


v.

APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE ANGELA JOHNSON, JUDGE
ACTION NO. 23-D-502860-003


TYOKIA BOWIE                                                                      APPELLEE


OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; A. JONES AND LAMBERT, JUDGES.

JONES, A., JUDGE:  Darius Bowie appeals from entry of a domestic violence order ("DVO") by the Family Court Division of the Jefferson Circuit Court ("family court") at the request of his former spouse, Tyokia Bowie.  Following a review of the record and all applicable law, we vacate the order and remand this matter to the family court for additional findings of fact followed by entry of an appropriate order.

# I. BACKGROUND

Tyokia filed for dissolution of her marriage to Darius on August 15, 2023.[1] They share two children.[2] Shortly after she filed for dissolution, she filed for an emergency protective order against Darius. She alleged that he had sent a variety of heated text messages. She reported one incident wherein he saw that she was not at work and accused her of being intimate with another while in actuality she was at her therapy appointment. In another incident, she reported he punched a hole in their bathroom wall. Once, after demanding to see her phone, he pressed an object into her rear, alleging that it was "what [she] wanted others to do." On another occasion, he had stood in front of her vehicle, not allowing her to drive away from the home. She reported his hostile behavior was escalating so much, she required medication and increased therapy appointments. She also reported she was not sleeping, hid her phone, and kept her spare set of keys with her.

---

[1] Darius reported in his brief that the entire record is not contained within the certified record. He states that their dissolution action, No. 23-CI-502442, should be included within the underlying action. It is not. Neither party withdrew the record on appeal, so we are unclear if Darius just presumed the Jefferson County Circuit Clerk's Office would know to include the record, or whether this Court would take it upon ourselves to retrieve it. Neither party has filed a motion to supplement the record to include it. Nevertheless, it was not included. "It is the responsibility of the appellant to ensure that this Court receives the complete record. We must presume that the missing parts of the record support the findings of the [family] court." *Brannock v. Brannock*, 598 S.W.3d 91, 95 (Ky. App. 2019) (citations omitted). Otherwise, we have gleaned some details of the preceding events and their agreement via the testimony at the evidentiary hearing.

[2] No orders of protection have been sought on behalf of the children.

Later, an agreed order dismissing the emergency protective order and a civil restraining order was filed.[3] Darius was required to be more cordial and respectful, and communication between them was only to relate to their children. At some point before Tyokia filed her second emergency protection petition, the parties attended mediation and submitted a decree of dissolution to the court.

After the decree was submitted for entry, but before it was entered, Tyokia filed her second petition, which is at issue in this appeal. In addition to recounting some of the events alleged in her prior, dismissed petition, she included several new allegations that she claimed showed that Darius was stalking her and attempting to control with whom she associated. Specifically, she alleged that Darius had contacted her commanding officer at the United States Army to report his suspicions that Tyokia had engaged in an extramarital affair with another colleague at some point earlier in the year.[4] Darius included a variety of "proof" in his email including screenshots of Tyokia's dirty underwear which he had retrieved from her clothes hamper, screenshots of her text messages, video footage from their doorbell camera, pinpoint locations where her phone had traveled, and video

---

[3] Tyokia states that for reasons unknown, the order was not signed by the family court.

[4] Tyokia denies she engaged in an extramarital affair.

footage of the inside of her coworker's apartment.[5]  Tyokia also alleged that Darius had been disrespectful to her during their communications, which per the dissolution action were supposed to be limited to issues surrounding their children.

The evidentiary hearing commenced on November 1, 2023.  Only Tyokia and Darius testified.  Tyokia testified that she believed Darius had been tracking her location through her phone and/or tablet and following her, although she was not sure how he was doing so since he had been removed from her phone plan some time ago.  Tyokia also testified that Darius was disrespectful in the parties' communications, which were supposed to be only about the children; however, her testimony in this regard was somewhat vague.  She also testified that that Darius emailed her commanding officer in the United States Army to report that she had engaged in an extramarital affair with one of her coworkers.  She believed that Darius contacted her commanding officer to harass, control, or intimidate her and in violation of their civil restraining order.  However, Tyokia acknowledged that the United States Army does have a prohibition against adultery or fraternization with other members of the army, and if someone were to report such an act, the report would be made to the individual's commanding officer.

---

[5] Tyokia was unsure how Darius obtained the locations from her phone, but she believed that he obtained the video footage of the inside of the coworkers' apartment while he was engaged in a video chat with one of the parties' children.

For his part, Darius admitted that he used poor judgment when he contacted Tyokia's commanding officer and pledged that he would not do so again as he has now had time to come to terms with the end of the parties' marriage. However, he nonetheless maintained that he had gathered significant evidence of her infidelity and that he had done so for the purpose of reporting her conduct to her commanding officer. He believed he was justified in doing so as he was engaged in the constitutionally protected activity of free speech.

Following the hearing, the family court found by a preponderance of the evidence that domestic violence had occurred and would likely occur again. It stated on the video record that Darius had engaged in stalking in that he was "engaging in a pattern of behavior in order to intimidate in order to well, with no good purpose" and although Darius had testified that he was planning on moving to Dallas, "that does not stop [him] from picking up a phone, or tracking, or being aggressive in communications." It entered a domestic violence order finding that stalking had occurred, stating on the docket sheet that he "[tracked] her phone and made other efforts to exercise control by reporting alleged adultery to her commanding officer even though the marriage was over."

This appeal followed.

## II. ANALYSIS

Our review of a family court's decision to grant or deny a DVO "is not whether we would have decided it differently, but whether the court's findings were clearly erroneous or that it abused its discretion." *Gomez v. Gomez*, 254 S.W.3d 838, 842 (Ky. App. 2008). We will not set aside findings of fact unless they are clearly erroneous, or unsupported by substantial evidence. CR[6] 52.01; *Moore v. Asente*, 110 S.W.3d 336 (Ky. 2003). "[F]indings of fact are clearly erroneous only if they are manifestly against the weight of the evidence." *Frances v. Frances*, 266 S.W.3d 754, 756 (Ky. 2008) (citation omitted). An abuse of discretion occurs only where the court's decision is "unreasonable, unfair, arbitrary or capricious." *Caudill v. Caudill*, 318 S.W.3d 112, 115 (Ky. App. 2010).

> Prior to entry of a DVO, the court must find "from a preponderance of the evidence that an act or acts of domestic violence and abuse have occurred and may again occur . . . ." KRS[7] 403.750(1). The preponderance of the evidence standard is satisfied when sufficient evidence establishes the alleged victim was more likely than not to have been a victim of domestic violence.

*Id.* at 114 (citation omitted). Pursuant to KRS 403.720(2)(a), domestic violence and abuse is defined as "[p]hysical injury, serious physical injury, stalking, sexual

---

[6] Kentucky Rules of Civil Procedure.

[7] Kentucky Revised Statutes.

abuse, strangulation, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, strangulation, or assault between family members or members of an unmarried couple[.]"

Darius argues before us that the family court abused its discretion when it issued a DVO with erroneous findings and under insufficient facts to do so, and that his conduct did not amount to stalking. We will address each in turn, beginning with the family court's findings of fact.

While the family court made certain oral findings of fact at the hearing's conclusion, it did not expressly incorporate those findings into its written order.[8] Accordingly, we can only consider the family court's written findings. *Id*. Its written order provides:

> The court finds by the preponderance of the evidence that DV occurred and could occur again. The Respondent stalked the Petitioner tracking her phone, and made other efforts to exercise control by reporting alleged adultery to her commanding officer even though the marriage was over. The Respondent to continue w/ visits, exchanges to occur w/ 3rd party.

---

[8] In *Smith v. McCoy*, 635 S.W.3d 811 (Ky. 2021), the Kentucky Supreme Court held that busy family courts do not need "to transcribe their clear oral findings in protective order cases" and that appellate courts may consider such findings so long as the oral findings have been "expressly and specifically incorporate[ed]" into its final written order. *Id.* at 817-18.

11/1/2023 Order. Darius maintains that the family court's written findings do not sufficiently establish a factual basis to support its conclusion that domestic violence (stalking) had occurred and may occur again.

While stalking is not defined in the DVO statutes, the statutes providing for the issuance of interpersonal protective orders ("IPO") do contain a definition of stalking. Given that DVOs and IPOs share a common objective and are similar in other respects, we have previously concluded that it is appropriate to borrow the definition of "stalking" contained in the similar IPO statutes. *Flintroy v. Gallegos-Esparza*, No. 2021-CA-0928-ME, 2023 WL 324617, at *3 (Ky. App. Jan. 20, 2023).[9]

The IPO statute defines stalking as "conduct prohibited as stalking under KRS 508.140 or 508.150, or a criminal attempt, conspiracy, facilitation, or solicitation to commit the crime of stalking[.]" KRS 456.010(8). KRS 508.140 provides:

> (1) A person is guilty of stalking in the first degree,
>
> > (a) When he intentionally:
> >
> > > 1. Stalks another person; and
> > >
> > > 2. Makes an explicit or implicit threat with the intent to place that person in reasonable fear of:

---

[9] This unpublished opinion is cited as persuasive authority pursuant to Kentucky Rules of Appellate Procedure ("RAP") 41.

a. Sexual contact as defined in KRS 510.010;

b. Serious physical injury; or

c. Death; and

(b) 1. A protective order has been issued by the court to protect the same victim or victims and the defendant has been served with the summons or order or has been given actual notice; or

2. A criminal complaint is currently pending with a court, law enforcement agency, or prosecutor by the same victim or victims and the defendant has been served with a summons or warrant or has been given actual notice; or

3. The defendant has been convicted of or pled guilty within the previous five (5) years to a felony or to a Class A misdemeanor against the same victim or victims; or

4. The act or acts were committed while the defendant had a deadly weapon on or about his person.

(2) Stalking in the first degree is a Class D felony.

KRS 508.150 provides:

(1) A person is guilty of stalking in the second degree when he intentionally:

(a) Stalks another person; and

(b) Makes an explicit or implicit threat with the intent to place that person in reasonable fear of:

1. Sexual contact as defined in KRS 510.010;

2. Physical injury; or

3. Death.

(2) Stalking in the second degree is a Class A misdemeanor.

In turn, these two statutes must be read in combination with KRS 508.130, which defines stalking as:

(1) (a) To "stalk" means to engage in an intentional course of conduct:

1. Directed at a specific person or persons;

2. Which seriously alarms, annoys, intimidates, or harasses the person or persons; and

3. Which serves no legitimate purpose.

(b) The course of conduct shall be that which would cause a reasonable person to suffer substantial mental distress.

(2) "Course of conduct" means a pattern of conduct composed of two (2) or more acts, evidencing a continuity of purpose. One (1) or more of these acts may include the use of any equipment, instrument, machine, or other device by which communication or information is transmitted, including computers, the Internet or other electronic network, cameras or other recording devices, telephones or other personal communications devices, scanners or other copying devices, and any device that enables the use of a transmitting device. Constitutionally protected activity is not included within the meaning of "course of conduct." If the defendant claims that he was engaged in constitutionally protected activity, the court shall determine the validity of that claim as a matter of

law and, if found valid, shall exclude that activity from evidence.

To summarize, for an individual to be granted a DVO for stalking, the family court must find by a preponderance of the evidence that the respondent:

> engaged in two or more acts directed at the victim that seriously alarmed, annoyed, intimidated, or harassed the victim, that served no legitimate purpose, and would have caused a reasonable person to suffer substantial mental distress, and that these acts may occur again. Additionally, the individual must prove that there was an implicit or explicit threat by the perpetrator that put the victim in reasonable fear of sexual contact, physical injury, or death.

*Halloway v. Simmons*, 532 S.W.3d 158, 162 (Ky. App. 2017) (citations omitted).

Additionally, if the respondent alleges that he was engaged in a constitutionally protected activity, the family court must determine the validity of that claim as a matter of law. If found valid the family court cannot consider that act to support its findings.

We recognize the very busy docket faced by our family courts and do not wish to heap more work on their shoulders. However, we must follow binding precedent and cannot engage in our own fact finding. The family court's written order, which does not incorporate its oral findings and pronouncements, is lacking essential findings to support entry of a DVO for stalking. Therefore, we must vacate and remand for additional findings of fact.

-11-

On remand, the family court shall make more specific written findings of fact. Specifically, before entering a DVO based on stalking, the family court must, at a minimum, find that Darius engaged in two or more acts directed at Tyokia that seriously alarmed, annoyed, intimidated, or harassed her; the acts served no legitimate purpose; the acts would have caused a reasonable person to suffer substantial mental distress; and the acts were accompanied by an implicit or explicit threat that put Tyokia in reasonable fear of sexual contact, physical injury, or death and that such acts may occur again. Moreover, since Darius claims that he was engaged in the constitutionally protected act of free speech when he emailed Tyokia's commanding officer, the family court must evaluate the validity of that claim before it considers the email as one of the acts.

### III. CONCLUSION

For the foregoing reasons, we vacate the family court's DVO order and remand this matter for the additional findings of fact and entry of an appropriate order. In doing so, we make no judgment on the ultimate outcome of this matter.

ALL CONCUR.

-12-

BRIEFS FOR APPELLANT:

Matthew R. Lemme
New Albany, Indiana

BRIEF FOR APPELLEE:

Catherine J. Kamenish
Louisville, Kentucky